Fate Harris and Lucille Harris v. Commissioner.
Harris v. Commissioner
Docket No. 4203-62.
United States Tax Court
T.C. Memo 1964-168; 1964 Tax Ct. Memo LEXIS 165; 23 T.C.M. (CCH) 998; T.C.M. (RIA) 64168; June 19, 1964
*165 Petitioners furnished more than one-half the support of husband-petitioner's sister, and petitioners are entitled to a deduction for the $600 dependency exemption. J. Richmond Pearson, for the petitioners. Robert G. Faircloth, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1961 in the amount of $304.01. The only issue for decision is whether petitioners are entitled to a dependency exemption for Annie Bell Kirby, sister of petitioner Fate B. Harris *166 (hereafter referred to as petitioner). Findings of Fact Some of the facts were stipulated and are so found. Petitioners are husband and wife who reside in Birmingham, Ala. They filed a joint Federal income tax return for the calendar year 1961 with the district director of internal revenue, Birmingham, Ala. In 1961 petitioner earned $4,694.46 as a steelworker in Birmingham. He also earned $150.85 from the performance of ministerial duties at the East Lake A.O.H. Church of God. Petitioner Lucille Harris worked part time during 1961 as a domestic servant in Birmingham and earned $764.75. Petitioners' total gross income in 1961 was $5,610.06. On their income tax return for 1961, petitioners claimed exemptions for themselves, for their two children and for petitioner's sister, Annie Bell Kirby (hereafter referred to as Annie). During 1961, Annie lived in Guntersville, Ala., some 60 to 70 miles from Birmingham, in a house which she owned, having inherited it from her father. She was a retired schoolteacher, 65 years of age and unmarried, [1] and she lived alone. Annie received the amount of $384 from the Alabama State Welfare in 1961. Except for contributions *167 from petitioners, she had no other income or receipts in 1961. In 1960, Annie received notice that the City of Guntersville was to condemn her house unless improvements were made to conform the house to certain standards, including the addition of a bathroom and facilities for hot water. She could not move from the house, and she found that she could not borrow the funds necessary to make the improvements unless her brother, petitioner, cosigned or endorsed her note. In 1960, Annie borrowed from $2,800 to $2,900 from a bank in Guntersville and executed a mortgage on her property to secure the note which evidenced the loan. Petitioner was liable on the note. Principal and interest on the note were to be paid in monthly installments. Throughout 1961 petitioner, who visited Annie about twice a month, made the monthly payments on the note, either directly to the bank or through Annie to whom he gave the amount of a monthly payment if, when he visited Guntersville, the payment was not due. Petitioner's payments on the note totaled $621.20 in 1961. He claimed no deduction for interest paid on the note on his return for 1961. In 1961, Annie incurred the following living expenses: *168 Food $580
Electricity
85 [2]
Drugs and vitamins
96
Clothing
150
Other utilities and miscellaneous
85
Total
996
Annie had other living expenses, but these were paid by petitioner. Of the above itemized expenses, petitioners furnished all the drugs and vitamins, all the clothing, and about $100 in food, which they bought and took to Annie. They also furnished funds for the expenses to the extent that Annie's receipts from social welfare were in sufficient. In 1961, Annie's house consisted of two bedrooms, a kitchen, a bathroom, and a porch. Each room was small. It was heated by gas and by an electric stove. Fair rental value of the house in 1961 did not exceed $15 per month. Annie received more than one-half of her support during 1961 from petitioners. Opinion Section 151(e), I.R.C. 1954, provides an exemption deduction of $600 for each dependent, as defined in section 152. Section 152 defines "dependent" as any individual bearing certain relationships to taxpayer, over half of whose support was received *169 from the taxpayer. The issue here turns on whether Annie received over one-half of her support during 1961 from petitioners. We think it clear that she did. In 1961 Annie received only $384 from Alabama Social Welfare; she had no other income or receipts or funds of her own. She did own the house in which she lived. Everything else required for her support was derived from petitioners. From Annie's testimony, it appears that she paid $480 for food and about $85 for electricity in 1961. Petitioners furnished her with drugs and vitamins in the amount of $96, with food in the amount of $100, and with clothing in the amount of about $150. They also furnished her with cash to pay her expenses to the extent that her welfare receipts were insufficient, which totalled at least $85. Therefore, at least $996 was required for Annie's support, exclusive of her lodgings, and it is apparent that petitioners furnished over one-half of this amount. But respondent contends that in determining the amount which Annie contributed to her own support, we must consider the fair rental value of Annie's house which she occupied in 1961. We have held that in the case where a taxpayer furnishes lodgings *170 for a dependent, the measure of the support furnished by the taxpayer is fair rental value of the lodgings. Emil Blarek, 23 T.C. 1037 (1955). It would seem to follow that the fair rental value of Annie's house should be the measure of the contribution which Annie made to her own support for lodgings. See Mildred Bartsch, 41 T.C. 883 (1964). The record offers little from which we can determine the fair rental value of Annie's house in 1961, but we do know that it consisted of two bedrooms, a kitchen, a bathroom, and a porch. The rooms were small, and the house was heated by gas except for an electric stove in the bathroom. We know also that in 1960 the City of Guntersville threatened to condemn the house unless improvements were made to conform the house to minimum standards, including the addition of a bathroom and facilities for hot water. Petitioner's execution or endorsement of a note and obtaining the loan at a Guntersville bank in 1960 made the improvements possible. Therefore, it appears that the house was worthless as rental property until the improvements were added. The improvements only made the house meet the bare minimum standards of the local *171 authorities. Based on the evidence presented we have found that a fair rental value of Annie's house in 1961 was $15 per month, or $180 for the year. Adding the above rental value to the previous figures recited, Annie's living expenses were at least $1,176. Of this amount Annie furnished $384 in cash and the $180 value of her lodgings, or a total of $564. It is therefore apparent that, based on these figures alone, petitioners furnished more than one-half of Annie's support. In addition petitioners claim that the amounts they paid on the mortgage during 1961 should be added to the total amount of Annie's support. Respondent argues to the contrary, claiming that any amount added to Annie's support as a result of the mortgage and payments thereon, must be added to her support in 1960 when the improvements were made, if at all, citing Rev. Rul. 58-404, 1958-2 C.B. 56. We do not think that ruling is opposite here. It would seem logical that since any fair rental value of the house, which must be considered a part of Annie's support, was due to the improvements which were being paid for by petitioners during 1961, the amounts paid by petitioner during that year should *172 be considered a part of the support furnished by petitioners. Otherwise, an unreasonable advantage would be gained by the parties concerned by simply having Annie apply all of her funds to meet the mortgage payments. But in any event, it would appear that at least that portion of the mortgage payments made by petitioners which were applied to real property taxes, interest, and insurance should be considered a part of Annie's total support. See Rev. Rul. 235, 1953-2 C.B. 23, modified in part by Rev. Rul. 58-404, supra. These amounts are not apparent from the record but we feel relatively certain, based on modern day mortgage lending practices, that a part of each payment was so applied. But even accepting respondent's view on this item, we are still convinced from the entire record that Annie received more than one-half of her support in 1961 from petitioners and we have so found as a fact. Petitioners are entitled to an exemption deduction for Annie for the year 1961. To reflect uncontested adjustments, Decision will be entered under Rule 50. Footnotes
1. As stipulated.↩
2. Annie heated her house partially with an electric stove. Her electric bills in the winter (5 months) were about $10 per month; for the remainder of the year they werew about $5 per month.↩