Frank G. Nordstrom v. Commissioner.
Nordstrom v. Commissioner
Docket No. 4423-69 SC.
United States Tax Court
T.C. Memo 1971-20; 1971 Tax Ct. Memo LEXIS 312; 30 T.C.M. (CCH) 91; T.C.M. (RIA) 71020; January 25, 1971, Filed *312 The petitioner established that, during the years 1966 and 1967, he provided over one-half of the support of his mother, who resided with him. Held: (1) The petitioner is entitled to a dependency exemption deduction for his mother in both years under section 151 of the 1954 Code (2) The petitioner correctly calculated his 1967 income tax using the head of household rates provided in section 1 of the 1954 Code. Held, further, the petitioner failed to establish the amount of his expenditures in 1967 for his mother's medical care, and he therefore is not entitled to deduct an amount therefor. Sec. 213 of the 1954 Code. Held, further, the petitioner failed to establish the amount of his expenditures in 1967 for his own medical care (with the exception of certain insurance premiums), and he therefore may not deduct an amount in excess of that allowed by the respondent under section 213 of the 1954 Code. Frank G. Nordstrom, pro se, #36 Poplar St., Spacious Living, Inc., Box 1-0136, Brighton, Colo.Marvin T. Scott, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent has determined deficiencies in the petitioner's income tax for the calendar years *313 and in the amounts listed below: 1966
$114.00
1967
291.81
The following issues have been presented for our decision: (1) Whether the petitioner may claim a $600 dependency exemption for his mother in the years 1966 and 1967 by virtue of his having furnished over one-half of her support as required by section 152 of the 1954 Code; (2) Whether the petitioner may calculate his 1967 income tax by using the head of household rates provided in section 1 of the 1954 Code; and (3) Whether the petitioner in 1967 may deduct medical expenses in excess of the $77.40 of such expenses allowed by the respondent under section 213 of the 1954 Code. (The petitioner conceds that his total medical expense deduction in 1967 does not exceed $292.16.) Findings of Fact At the time the petition in this case was filed, the petitioner, Frank G. Nordstrom, resided in Brighton, Colorado. His Federal income tax returns for the years 1966 and 1967 were filed with the district director of internal revenue, Denver, Colorado. During the years in issue, Frank was employed by the Department of Revenue of the State of Colorado at a salary which was $3,686 in 1966 and $4,066 in 1967. He made his home with his mother, Ina A. *314 Nordstrom Zimmerhackel, in a house trailer (sometimes referred to herein as a mobile home), which was located on a lot in Block 1, Spacious Living, Brighton, Colorado. During the first six months of the year 1966, Frank's daughter also resided in the trailer. The mobile home had two bedrooms, a kitchen, a bathroom, and a living room. It was nicely furnished with furniture purchased and paid for by Frank and was enclosed in a chain link fence erected and paid for by Frank at a cost of 92 $1,000. In 1967 Frank purchased $800 worth of new furniture for the home. He planted and landscaped the lot over the years. Frank was the original purchaser of the mobile home and of the lot in Brighton. In 1965, after he had finished making payments on the trailer, Frank transferred the title to his mother as a gift. [1] *315 The trailer cost approximately $9,000 in 1963 when it was acquired. During the years in question the mobile home, its furnishings and the land on which it was situated had a yearly fair rental value of approximately $3,000, of which one-half, $1,500, was attributable to the trailer and $1,500 to the land, furnishings and improvements owned by Frank. Ina's income during each of the years in question was approximately $1,200, the money coming from Social Security and Colorado old age assistance. In each year, she spent between $300 and $600 of her social security income of approximately $850 to pay off a loan for funeral expenses and the purchase of a crypt for a deceased son. The balance of her social security was spent on music lessons and on other personal items. The music lessons cost about $260 in each year. Ina used all of the money she received from her old age pension for her support. This amounted to approximately $365 in each year. She turned no money over to Frank. During each of the years 1966 and 1967, Frank spent approximately $1,800 for groceries for his mother and himself. Ina made no expenditures for food. Frank purchased cloth from which his mother made her own clothing, and he paid for Ina's life insurance. Frank paid all of the utility bills for the trailer, a total of approximately $550 in each year. He also paid for all repairs and maintenances *316 incurred in connection with the mobile home. During the year 1967, Ina suffered an attack of shingles and incurred medical expenses. Most of these expenses were covered by health insurance (Medicare). An expensive salve was recommended by her doctor to treat this ailment. It cost $4.50 a tube, and each tube lasted only two days. The salve was not covered by insurance, and Frank paid for it and other medication for his mother out of his own pocket. Frank had expenses for his personal medication during the year. In addition, he paid $154.80 in 1967 for premiums on his medical care insurance. In each of the years 1966 and 1967, Frank made payments on loans on which he was personally obligated. His approximate payments (apparently including interest) in each year were as follows: $800 in each year to repay a loan [2] to purchase an automobile $132 in each year to repay a loan to purchase a fence; $100 to $300 in each year to repay miscellaneous loans from the Colorado State Employees Crdit Union; and $360 in 1966 and $300 in 1967 to repay a mortgage loan on his land. On his income tax return for the year 1966, Frank *317 claimed a $600 dependency exemption for his mother and a $600 dependency exemption for his daughter and calculated his tax using the head of household rates. In his income tax return for the year 1967, Frank claimed a $600 dependency exemption for his mother and again calculated his tax using the head of household rates. In addition, he inadvertently deducted $1,103.36 in medical expenses on the 1967 return. In an amended return for the year 1967, executed about a week later, Frank reduced the amount of the medical expense deduction to $292.16. [3]
In his statutory notice of deficiency, dated June 12, 1969, relating to the petitioner's taxable years 1966 and 1967, the respondent disallowed the claimed dependency exemption in both years for Frank's mother because it had not been established that he "furnished *318 more than one-half of her support during the taxable year as required by section 152 of the Internal Revenue Code." With reference to the year 1967 only, the respondent (1) computed the petitioner's income tax using individual tax rates rather than head of household rates because Frank's home "did not constitute the principal place of abode for any person for whom [he] would be 93 entitled to the exemption deduction under section 151 of the Internal Revenue Code," and (2) disallowed $1,025.96 of Frank's medical expense deduction because only $77.40 of the $1,103.36 deducted on the original 1967 return [4] *319 qualified under "the provisions of section 213 of the Internal Revenue Code." (The $77.40 reflects onehalf of the premiums for Frank's medical insurance.) Opinion The petitioner claims he is entitled to a $600 dependency exemption for his mother in each of the years before us. In his statutory notice, the respondent has disallowed these exemptions. During the years in issue, section 151 (e)[5] *320 permitted an exemption of $600 for each of a taxpayer's dependents. The term "dependent" is defined in section 152(a) to include certain individuals "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Section 152(a)(4) includes "the * * * mother of the taxpayer among the individuals who can qualify for "dependent" status. The respondent has determined that it has not been established that Frank provided more than one-half of his mother's support.[6] The petitioner has the burden of showing the amounts he contributed to his mother's support and the total amount that was expended on such support. $ Rose D. Seraydar, 50 T.C. 756, 760-761 (1968); Robert I. Brown, 48 T.C. 42, 43 (1967); James E. Stafford, 46 T.C. 515, 517-518 (1966); James H. Fitzner, 31 T.C. 1252, 1254 (1959). He has the burden of proving error in the statutory notice. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32 of the Rules of Practice of this Court. We conclude that he has carried that burden. The *321 record discloses that the following items were included in Ina's total support in each of the years 1966 and 1967: (1) Colorado old age assistance: Ina applied the old age pension of $365 she received from the state for her support. [7] Additional amounts may have been expended by her on support from her social security income, but we are convinced that such sums were limited and not of sufficient amount to be of consequence. [8]
(2) Fair rental value of mobile home: The *322 fair rental value of the trailer, owned by Ina, was approximately $1,500 a year, and of the land, furnishings and improvements, owned by Frank, a like sum, $1,500. One-half of this amount must enter into the calculation of Ina's total support. Emil Blarek, 23 T.C. 1037, 1038-1039 (1955). (3) Groceries: In the absence of contrary evidence, one-half of the $1,800 spent on groceries for Frank and Ina is attributable to Ina's support. (4) Utilities: Similarly, one-half of the $550 spent on utilities for the mobile home is attributable to Ina's support. (5) Other items: Other expenditures were made by Frank for Ina's clothing, 94 insurance and medicine. The record is devoid, however, of evidence dealing with the precise amounts of such expenditures, [9] but the evidence convinces us that they were all provided for by Frank. Summarizing the evidence we have in this case, it appears that the following amounts comprise Ina's support in each year: Old age assistance
$ 365
Fair rental value of the furnished trailer and premises (1/2 of $3,000)
1,500
Groceries (1/2 of $1,800)
900
Utilities (1/2 of $550) 275
Total
$3,040
Of this total amount, Frank *323 provided at least $1,925 in each year for Ina's share of the groceries ($900), the utilities ($275), and the home premises which he still owned ($750). In 1966 and 1967, comparable trailer space in the area on which to place the trailer had a fair rental value of at least $125 a month. [10] *324 Since $1,925 is more than one-half of $3,040, the petitioner must prevail on this issue because he has established that his contribution to Ina's support exceeded one-half of her total support. The petitioner believes he is entitled to compute his tax in 1967 using the head of household rates found in section 1 of the Code because his mother was his "dependent." Section 1(b)(2) defines a "head of household" to include an unmarried individual who maintains as his home a household which is the principal place of abode of any person for whom the taxpayer would be entitled to a dependency exemption under section 151. Our holding above - that Ina was Frank's "dependent" under the applicable sections - is dispositive of the "head of household" question as well. Filomena F. Carito, 54 T.C. 1614 (1970). See also Scarangella v. Commissioner, 418 F. 2d 228 (C.A. 3, 1969), affirming a Memorandum Opinion of this Court. We hold that the respondent incorrectly computed the petitioner's tax in 1967 by using the individual tax rates found in section 1 rather than the head of household rates. The petitioner contends he is entitled to a total medical deduction in 1967 of $292.16 - $214.76 more than the $77.40 deduction allowed by the respondent. The petitioner believes the respondent has failed to take into account *325 various expenses he paid for his own and his mother's medical care. Section 213[11] permits a deduction (with certain limitations) for amounts paid during the taxable year "for medical care of the taxpayer, * * * and dependents (as defined in section 152) * * *." The record before us, however, fails to disclose with any certainty whatsoever the amounts actually paid by Frank for Ina's medical care. No documentary evidence was offered at trial, and the oral testimony did not suggest any precise or even approximate amounts. [12]
The record is even more vague as to amounts Frank may have expended on his own medical care. We are able to find only that he paid $154.80 in 1967 as premiums for medical insurance, *326 a fact which the respondent concedes. This finding does not result in an increased deduction under the provisions of section 213, and we therefore uphold the respondent's determination that the petitioner can deduct only $77.40 in 1967 as a medical expense. In accordance with our conclusions and holdings announced herein and to reflect required adjustments, Decision will be entered under Rule 50. 95 Footnotes
1. Subsequent to the years in issue, the petitioner made a similar transfer to his mother of the land, but during 1966 and 1967 he owned the lot, the furnishings and all lot additions and improvements.
2. Ina pledged the mobile home as additional security for this loan to Frank.↩
3. The amended return also (1) claims an adjustment to income for $272 as an employee business expense, and (2) claims a credit against the income tax of $60 as an expenditure for nonhighway Federal gasoline tax. The date appearing beside the petitioner's signature on the amended return is February 4, 1968. However, the amended return was not filed with the Revenue Service until May 21, 1968.↩
4. The respondent based his statutory notice calculations on the figures appearing in the petitioner's original 1967 return and not upon the figures appearing in the amended return. In his petition, the petitioner has objected to the respondent's rejection of his amended return. However, we can grant no relief to the petitioner in this regard since the acceptance or rejection of an amended return is solely within the discretion of the Commissioner. Ira Goldring, 20 T.C. 79, 81↩ (1953); Kunkel & Co., Inc., 3. B.T.A. 133, 137 (1925). In any event, the petitioner has not raised any issue in his petition with respect to the adjustment to income and credit against tax for nonhighway Federal gasoline tax referred to in footnote 3, supra, nor has he offered evidence concerning those items claimed on the amended return. We therefore would not be able to allow those items even if they were properly at issue in this case.
5. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954. Sec. 151(e)↩ was amended by Public Law 91-172 to raise the exemption to $625, effective for taxable years beginning after December 31, 1969, and before January 1, 1971. Additional increases in the exemption are made by Public Law 91-172 for subsequent taxable years.
6. The statutory notice does not raise the issue of whether Ina's gross income was $600 or more (see sec. 151(e)(1)(A), as it applied during the years before us), and we therefore do not discuss this question. Compare Robert W. Hodge, 44 T.C. 186 (1965) and Harold G. McDermid, 54 T.C. 1727↩ (1970).
7. We observe that Ina's entire $1,200 income can be regarded as fulfilling her support needs only to the extent that it was actually so expended. Eddie L. Carter, 55 T.C. - (October 22, 1970).↩
8. Because it has no effect on the result reached herein, we do not decide the question of whether, on the facts presently before us, the amount spent for Ina's music lessons constitutes a support item. See in this connection, Raymond M. McKay, 34 T.C. 1080, 1084-1085↩ (1960). Even if we were to conclude that the amounts left from Ina's social security, from $250 to $550 per year, were all spent on Ina's support and that Ina's serious musical efforts were support, the results reached herein would be unchanged. See footnote 10, infra.
9. With regard to medical expenses, see footnote 12, infra.↩
10. Obviously, since Ina had the title to the trailer house in 1966 and 1967, it is she and not Frank who must be credited with furnishing the $750 reflecting one-half of the fair rental value of the trailer, but Frank furnished an equal amount to Ina's support, $750 for one-half of the fair rental value of the lot and other improvements thereon. If all of Ina's social security not expended to repay her loan to pay for her deceased son's funeral and crypt is considered as having itself been spent for her own support, which is not clear from the record, her total support would be increased to a maximum of $3,590; petitioner's contribution of $1,925 still exceeds one-half thereof. See, e.g. Lucille Marshall, T.C. Memo 1970-330, Henry E. Linthicum, T.C. Memo. 1968-97, and Fate Harris, T.C. Memo. 1964-168↩.
11. Public Law 89-97 amended section 213(a)↩, effective for taxable years beginning after December 31, 1966, to read, in part, as quoted herein. 12. While the testimony would indicate that Frank purchased at least one tube of the salve prescribed for Ina's ailment, he would have had to pay for a substantial number of such tubes in order to produce an increased deduction under section 213 (see sec. 213(a)(1)↩). We are unable to determine from the record the number of tubes Frank purchased.