Merrill M. Pye and Doris S. Pye v. Commissioner. Jerome L. Simons v. Commissioner.
Pye v. Commissioner
Docket Nos. 2319-64, 2975-64.
United States Tax Court
T.C. Memo 1966-80; 1966 Tax Ct. Memo LEXIS 203; 25 T.C.M. (CCH) 451; T.C.M. (RIA) 66080; April 18, 1966
Merrill M. Pye and Doris S. Pye, pro se, 16373 Royal Hills Dr., Encino, Calif., in Docket No. 2319-64. Willard D. Horwich, 9107 Wilshire Blvd., Beverly Hills, Calif., for petitioner in Docket No. 2975-64. Morley H. White, for respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in the Federal income tax of petitioners in the years and in the amounts as follows: Docket No.
Taxable Year
Deficiency
2319-64
1960
$412.00
2319-64
1961
408.00
2975-64
1960
366.04
2975-64
1961
379.82
*204 The cases were consolidated for purposes of trial and the filing of briefs. The issue for decision is whether petitioners in Docket No. 2319-64 or petitioner in Docket No. 2975-64 are entitled to dependency exemptions with respect to one minor child in 1960 and two minor children in 1961 pursuant to section 151(e) of the Internal Revenue Code of 1954. Petitioner in Docket No. 2975-64 claimed a dependency exemption for two minor children in 1960. Petitioners in Docket No. 2319-64 claimed a dependency exemption for only one of the two minor children in 1960. By the absence of a brief, we may assume that respondent has abandoned his initial denial of a dependency exemption to petitioner in Docket No. 2975-64 with respect to the minor child not claimed by petitioners in Docket No. 2319-64. Findings of Fact Some of the facts have been stipulated and as stipulated are so found. Petitioners Merrill M. Pye and Doris S. Pye filed their Federal joint income tax returns for the calendar years 1960 and 1961 with the district director of internal revenue at Los Angeles, California. Doris S. Pye will hereinafter sometimes be referred to as Doris. Petitioner *205 Jerome L. Simons (hereinafter referred to as Jerome) filed his Federal individual income tax returns for the calendar years 1960 and 1961 with the district director of internal revenue at Los Angeles, California. At some time prior to 1948, Jerome and Doris were married. There were two children born of that marriage, Jerome, Jr., born April 17, 1948, and Kenneth, born June 27, 1952. On or about September 26, 1955, Jerome and Doris were divorced under the terms of an interlocutory decree of divorce, and a final decree of divorce was entered October 5, 1956. At the same time the court ordered Jerome to pay child support of $50 per month for each child. A divorce was granted by the Superior Court of the State of California for the County of Los Angeles. Doris was awarded custody of the two children in the divorce decree. On or about November 22, 1960, the order of the State court with respect to child support was modified, and Jerome was ordered to pay the sum of $75 per month as part of the support of each child. The parties agree that the following amounts were paid by Jerome during 1960 for the support of Kenneth: Kenneth
Support payments in accordance
with State court decree $625
Camp
60
Medical costs
27
Total amounts 1960 $712
*206 They also agree that during 1961 Jerome paid the following amounts for support of Jerome, Jr., and Kenneth: Jerome, Jr.
Kenneth
Support payments $862 $900
Clothing
59
58
Medical
38
38
Total amounts 1961 $959 $996
In October 1960 Jerome moved into a two-bedroom apartment in Los Angeles. The rental was $165 per month. (The rental for a one-bedroom apartment in the same building was $125 per month.) This apartment was occupied by Jerome and his second wife. Jerome, Jr., and Kenneth occupied the second bedroom whenever they spent a weekend with Jerome. Prior to October 1960, Jerome would exercise his visitation rights which were granted under the divorce decree by taking either Jerome, Jr., or Kenneth to spend alternate Saturdays or Sundays with him. During 1960, Jerome took one or the other of the children on approximately 24 weekends. Thus, he had each child with him on approximately 12 weekends during 1960. Subsequent to October 1960, both children would remain overnight at Jerome's apartment on alternate weekends. During these weekends, Jerome would entertain his children by taking them on diverse outings, i.e., fishing, horseback riding, etc. *207 When Jerome would have both children he would spend between $15 and $20 a weekend for such activities. Jerome would drive to the Pyes' house in order to pick up Jerome, Jr., and Kenneth and would also deliver them back to the Pyes' house by car. Each round trip totalled approximately 60 miles. In addition to the amounts stipulated, during 1960 and 1961 Jerome spent approximately $200 and $110, respectively, on clothing for Kenneth, and during 1961 Jerome spent approximately $110 on clothing for Jerome, Jr. For both of the years before us, Jerome maintained life insurance policies with his two sons named as beneficiaries. The premium cost allocable to each child for each year in issue was approximately $94. In February 1959, the Pyes leased a three-bedroom house, located in Encino, California. The house had a swimming pool and substantial grounds which the Pyes, during the years in issue, landscaped by adding trees, lawns, flower beds, and a patio. The total cost of these improvements was in excess of $3,000. The children's rooms were also furnished by the Pyes during the years in issue at an approximate cost of $350 for each room. The rental payments under the lease amounted *208 to $350 per month. The Pyes paid said rental until March 20, 1961. Under the terms of the lease the Pyes were required to pay all utility bills. It also contained a purchase option which enabled the Pyes to buy the house on February 20, 1961, for approximately $41,000. [1]
During the years in issue the Pyes incurred the following expenses in the maintenance and upkeep of their house and its grounds: 1960
1961
Utilities $660 $660
Pool maintenance
408
408
Gardener
480
480
In or about March 1961, the Pyes exercised the aforementioned purchase option and bought the house which they had been renting. Subsequent to said purchase they incurred the following expenses during 1961: House payments pursuant to first trust
deed (Apr. 1961-Dec. 1961)
$1,971.00
House payments pursuant to second
trust deed (Apr. 1961-Dec. 1961)
839.00
House taxes
439.89
Personal property tax
69.76
Escrow fee
290.00
Title insurance
195.76
*209 The following expenditures were made by the Pyes for the benefit of Jerome, Jr., and Kenneth during the taxable years in issue: Jerome, Jr.
Kenneth
1961
1960
1961
Food $405 $380 $405
Clothing
300
275
300
Health and medical in-
surance
55
55
55
Miscellaneous
592 [1]
250
332
In his Federal income tax returns for 1960 and 1961, Jerome claimed as dependents both Jerome, Jr., and Kenneth and, accordingly, reduced his taxable income by $1,200 in each year. Respondent in his notice of deficiency disallowed said dependency exemptions in 1960 and 1961 on the grounds that Jerome failed to establish that he had furnished more than one-half of his children's support during those years. Petitioners Pye claimed dependency exemptions for Kenneth in their Federal income tax returns for 1960 and 1961 and a dependency exemption for Jerome, Jr., in their 1961 return. Respondent disallowed the dependency exemptions on the grounds that the Pyes failed to establish support of the children for the years in issue. Ultimate Finding of Fact The fair rental value of the lodgings furnished each child *210 in the Pyes' residence for each year in issue was $750. Opinion The issue for decision is whether the Pyes or Jerome are entitled to dependency exemptions under section 151(e) of the Internal Revenue Code of 1954. Section 152(a) defines the term "dependent," as here applicable, as meaning a son of the taxpayer "over half of whose support for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Thus, it is the burden of each petitioner to establish not only what amount he or she contributed toward a dependent's support but also that it exceeded one-half of said dependent's total support. Aaron F. Vance, 36 T.C. 547 (1961). Accordingly, the only question presented herein is the factual one as to whether the Pyes or Jerome furnished over one-half of the cost of the support of Kenneth in 1960 and 1961 and Jerome, Jr., in 1961. The parties have stipulated that Jerome paid $959 for the support of Jerome, Jr., in 1961 and $712 and $996 for the support of Kenneth in 1960 and 1961, respectively. Jerome argues that he spent additional amounts for their support during those years. He contends that such *211 additional contributions include, as support furnished by him, inter alia, (1) that portion of his apartment rental attributable to the second bedroom, (2) automobile expenses for conveying the children between his home and the Pyes' home, and (3) life insurance premiums with the children as beneficiaries. We do not consider any portion of the rental value of Jerome's apartment and any furnishings therein as a part of the support of the children. Doris had custody of the children and the duty to provide them with a place to live. Jerome was merely exercising his personal rights of visitation when he brought either child to his own home. See Aaron F. Vance, supra.Jerome's automobile expenses incurred in conveying his children between the Pyes' house in Encino and his Los Angeles apartment on his weekend visits were for his personal benefit rather than for support of the children and, as such, are not includable as elements of their support. Raymond M. McKay, 34 T.C. 1080 (1960). Nor are life insurance premiums items of support. Aaron F. Vance, supra. During 1960, Jerome had Kenneth with him on approximately 12 weekends. [2] Since we have found *212 that Jerome spent between $15 and $20 on both children for weekend activities and outings, we conclude that he spent $120 on weekends for Kenneth during 1960. In 1961 Jerome had both children spend alternate weekends at his apartment. Therefore, we conclude that Jerome spent $260 on each child's weekend activities during 1961. We believe that Jerome expended $200 and $110 on clothing for Kenneth in 1960 and 1961, respectively, and $110 for Jerome, Jr., in 1961; and, furthermore, Jerome spent $27 and $38 on medical expenses for Kenneth in 1960 and 1961, respectively, and $38 on medical expenses for Jerome, Jr., in 1961. Therefore, we conclude that Jerome spent for Kenneth's support $1,059 and $1,404 in 1960 and 1961, respectively, and $1,367 in 1961 for Jerome, Jr.'s, support. There were no amounts stipulated as to the costs incurred by the Pyes in either year toward the support of Jerome, Jr., and Kenneth. However, we have set out in our Findings of Fact various amounts which we believe were expended by the Pyes for the support of the children. We need not review the Pyes' *213 evidence here regarding the aforesaid support items. It is enough here to state that the record clearly establishes such expenditures. Since the term "support" includes the fair market value of lodgings provided for a dependent, it is necessary to measure the fair rental value of the Pyes' home and the portion thereof attributable to the children. We note that utility costs and real and personal property taxes on the Pyes' home are to be taken into account in determining the fair rental value of the lodgings provided Jerome, Jr., and Kenneth. We have found that the fair rental value of the lodgings furnished each child in the Pyes' residence for each year in issue was $750. We believe that the fair rental value of the house was at least $375 per month considering the cost of the house; real and personal property taxes paid by the Pyes relating to the house, grounds, and furnishings; the value of the landscaping; maintenance and utility costs; and the actual rental paid for the house by the Pyes prior to purchase. Such being the case, $125 per month is fair and reasonable for both Jerome, Jr.'s, and Kenneth's occupancy. On the basis of the foregoing, we find that petitioners Pye *214 expended $1,710 and $1,842 in 1960 and 1961, respectively, for the support of Kenneth, and $2,102 in 1961 for the support of Jerome, Jr. * The difference between (1) the amounts expended by the Pyes for each child and (2) the child support payments furnished Doris by Jerome constitutes the amount of money actually contributed by the Pyes toward the support of Kenneth and Jerome, Jr., individually. 1960
1961
Jerome,
Kenneth
Jr.
Kenneth
Amounts spent by
the Pyes
$1,710
$2,102
$1,842
Support payments
by Jerome
625
862
900
Support actually
paid by the Pyes
$1,085
$1,240
$ 942
The total amounts expended for the support of
the children during 1960 and 1961 were as
follows: Amounts spent by
the Pyes
$1,085
$1,240
$ 942
Amounts spent by
Jerome
1,059
1,367
1,404
Total support
$2,144
$2,607
$2,346
Accordingly, we conclude that (1) petitioners Pye furnished over one-half of the total support of Kenneth in 1960 and (2) Jerome *215 furnished over one-half of the total support of Jerome, Jr., and Kenneth in 1961. Petitioners Pye are, therefore, entitled to a dependency exemption for Kenneth in 1960, and Jerome is entitled to dependency exemptions for Kenneth and Jerome, Jr., in 1961. Decisions will be entered under Rule 50. Footnotes
1. Had the Pyes purchased the house at the time they entered into the lease the purchase price would have been approximately $43,000; however, the lessor agreed that if they chose to exercise their purchase option, $2,000 of the rental payments would be applied against the actual purchase price to reduce it to approximately $41,000.↩
1. Including, inter alia, a $135 bicycle.↩
2. Jerome testified that he took the children individually on a total of 23 or 24 weekends during 1960.↩
*. By Tax Court order dated May 6, 1966 and signed by Judge Fay↩, the material from this point to the end of the opinion was substituted for the last two sentences of the original opinion.