Donald A. Turner v. Commissioner.
Turner v. Commissioner
Docket No. 995-65.
United States Tax Court
T.C. Memo 1967-127; 1967 Tax Ct. Memo LEXIS 132; 26 T.C.M. (CCH) 566; T.C.M. (RIA) 67127; June 8, 1967
*132 Held: Petitioner, the father of a boy and a girl, established that he provided over one half his daughter's total support during the year 1960. He failed to establish that he provided over one half the total support afforded his son during 1960, or that he provided over one half the total support furnished either child during 1961. Accordingly, secs. 151 and 152, I.R.C. 1954, do not permit petitioner to claim his son as a dependent for the year 1960, or either child as a dependent for the year 1961. Held further: Petitioner is not permitted to allocate, on the evidence presented, any portion of his lodging, furniture, utility or automobile expenses as support contributions. Custody had been awarded to the mother, and when the children were lodged with petitioner (their father) on weekends, he was merely exercising rights of visitation. Aaron F. Vance, 36 T.C. 547 (1961), followed. Louis H. Miller, Jr., for the petitioner. John W. Tissue, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in petitioner's income taxes for the calendar years 1960 and 1961 in the respective amounts of $289.75 and $399.80. Petitioner filed Federal income tax returns for the years 1960 and 1961 with the district director of internal revenue at Richmond, Virginia, in which returns he claimed dependency exemptions for his two children born of his former marriage. Additionally, petitioner claimed William J. Morris as a dependent for the year 1961. At trial petitioner conceded that he was not entitled to a dependency exemption for Morris. The sole question for our decision is whether petitioner furnished over one half of the total support provided *134 each of his two children during the years 1960 and 1961 so as to be entitled to dependency exemptions for either or both children within the meaning of sections 151 and 152, Internal Revenue Code of 1954. [1] Petitioner's former wife and her present husband, with whom both children resided, also claimed dependency exemptions for them during the years before us. Findings of Fact Some of the facts have been stipulated and are found accordingly and adopted as our findings. Petitioner who maintained his legal residence at Columbia, Virginia, when he filed his petition herein, was married to Mary Ligon early in 1949, and two children were born of this marriage. They are Brenda Jean Turner, who was born on September 17, 1949, and Donald Keith Turner, who was born on October 26, 1950. After seven years of marriage petitioner and Mary Ligon Turner were divorced from bed and board on June 21, 1956, under a decree of the Law and Equity Court of the City of Richmond, Virginia. This decree, which did not have the effect of an absolute and final divorce, specifically *135 provided that "all questions relating to the custody of Brenda Jean Turner and Donald Keith Turner * * * be * * * left to the discretion of the Juvenile and Domestic Relations Court * * *" Thereafter and accordingly, on September 19, 1956, the Juvenile and Domestic Relations Court awarded custody of both children to their mother, Mary. The court orders specifically state that the "parents" were before the court. Identical orders were entered for each child and they provided as follows: Parents present. Child adjudged within purview J & D Rel Ct Law. Custody awarded mother. On the same day, September 19, 1956, the same judge of the Juvenile and Domestic Relations Court by separate order ordered petitioner to pay the sum of $75 per month for support of the two children. The monthly payment of this amount was to commence in October of 1956 and continue until further order of the court, through the clerk of court. Petitioner and Mary were both present in court on the day that custody was awarded and child support ordered. On December 27, 1956, approximately six months after the divorce from bed and board had been obtained, petitioner and Mary were divorced absolutely from the bonds *136 of matrimony by the Law and Equity Court of the City of Richmond. Subsequently, Mary Ligon Turner married William J. Sanderford, and during the years 1960 and 1961, the Turner children lived with the Sanderfords. The Sanderford household during these years consisted of William, Mary (the mother) and the two Turner children. The Sanderfords and the Turner children resided in a rented apartment on Brampton Way in Richmond for ten months of 1960. During November and December of 1960 and all of 1961, they lived in a 3-bedroom residence purchased by the Sanderfords in November at 5726 Ullswater Avenue in Richmond. The children had the run of and enjoyed full use of both homes. During both years in issue William Sanderford worked for a Richmond-based metals firm, and Mary was employed by a local cigarette factory. Their combined gross income in each of the years before us was between $9,000 and $10,000. Petitioner was employed during the years in issue as a car repairer for the C & O Railroad. His income consisted solely of the wages which he received from his employer in the amounts of $5,490.72 for 1960 and $5,673.74 for 1961. During all of 1960 and through August of 1961, petitioner *137 lived in a rented apartment, which he furnished to the extent that it could easily accommodate the two children when they came to visit him. Petitioner had the children in his care on virtually every weekend of 1960 and 1961. If a weekend was missed, it was made up during the school vacation period in summer. On these weekend visits the children were taken out for meals, were regularly taken to church, and occasionally were driven to receive necessary dental or medical care. Petitioner also provided necessary clothing for the children to wear when they visited him, and laundry, cleaning, et cetera. The orders of the Juvenile and Domestic Relations Court awarding custody to their mother did not specify what visitation rights petitioner would enjoy. It is clear to us, however, on the basis of the entire record, that the mother acquiesced in the children's weekend visits with their father. Whether the acquiescence was voluntary or whether it was the result of a judicial decision does not appear in the record before us. The weekends and vacation periods spent by the children with their father and with their mother's consent were in the nature of visitation, and the mother did not relinquish *138 their formal custody to him, or fail to live up to her obligations as their legal custodian. Prior to 1959 petitioner had resided in the home of his sister, but after two children had been born to the sister her home became too crowded to accommodate easily the weekly visits of the Turner children. As previously mentioned petitioner occupied a rented apartment in 1960 and most of 1961. In August of 1961 he purchased and moved to a farm. He decided that a country location would be good for him and for the children. It is obvious from the outdoor nature of his gifts to them in 1961 that the children's entertainment was also one of the motives behind petitioner's decision to purchase the farm. In that year petitioner gave a pony to his daughter and a rifle and camping equipment to his son. Petitioner, during the years before us, faithfully performed the child-support obligations which the Juvenile and Domestic Relations Court had placed upon him in its order of September 19, 1956. Additionally, he made many expenditures on the children's behalf which he was not required to make. He was a devoted father in spending both his time and resources for his children. However, the Sanderfords *139 who had custody of the children and whose gross income was approximately twice that of petitioner's, also necessarily incurred many expenses for the children's benefit and support. As already found, both petitioner and the Sanderfords (who filed joint returns in both years) claimed the Turner children as dependents. In their returns the Sanderfords itemized their support contributions for the children as follows: 1960
Following are costs of maintaining home in which these children live together
with taxpayers.
Rent, 10 mo. at $68.00 2 mo. at $94.00
$ 868.00
Groceries, Dairy Products, average $42.50 per week
2,210.00
Utilities, Electricity
$157.20
Oil Heat
161.65
Telephone
92.40
Water
57.15
468.40
Recreation, etc. (Estimated)
150.00
Medical, Hospitalization Insurance, etc.
329.55
Total for Family of 4
$4,025.95
Average per individual member of Family
$1,006.49
Brenda
Donald
Average per child
$1,006.49
$1,006.49
Clothing
408.25
368.10
School Lunches 39 Weeks
53.50
53.50
School Supplies, Incidentals
30.00
30.00
$1,498.24
$1,458.09
Contributed by D. A. Turner
431.00
431.00
Contributed by Taxpayers
$1,067.24
$1,027.09
1961
Following is a statement of costs of maintaining home in which these children
live with taxpayers.
Rental Value, 12 Mo. at $94.00
$1,128.00
Groceries, Dairy Products average $42.00 per week
2,184.00
Utilities, Electricity
$168.00
Oil Heat
171.00
Telephone
92.40
Water
48.00
479.40
Recreation - Estimated
350.00
Medical, Hospitalization, Insurance, etc.
523.77
Total
$4,665.17
Average per individual
$1,166.29
Brenda
Donald
Above Average per Child
$1,166.29
$1,166.29
Clothing
396.40
376.60
School Lunches, 39 Weeks
60.20
60.20
School Supplies
43.50
33.20
$1,666.39
$1,636.29
Less Amount Ordered to be Contributed
by D. E. Turner
431.00
431.00
Contributed by Taxpayers
$1,235.39
$1,205.29
*140 The itemizations in these returns were not based on exact or complete records but in some respects represented the Sanderfords' recollections and estimates of various expenses incurred during the preceding year. No consideration was given by them to amounts expended by petitioner for the children's support except for payments made through the Juvenile and Domestic Relations Court, and even a portion of these payments were not included in their computation of total support each year. In his return petitioner merely claimed both children as dependents each year before us. He made no itemization of his contributions nor did he compute total support. In December of 1964 respondent issued a statutory notice disallowing petitioner's claim that his two children were his dependents for income tax purposes during 1960 and 1961. Respondent's position was and is that petitioner did not furnish over one half of their total support in either year. Accordingly, deficiencies in income tax were assessed against petitioner in the amounts of $289.75 for 1960 and $399.80 for 1961. During the year 1960 petitioner paid Mary, through the Clerk of the Juvenile Court $636 for Brenda's support and *141 $431 for Keith's support. In addition thereto he paid for, furnished and provided food, clothing, allowances, gifts and other support items in 1960 of approximately $500 for each of the children. In 1961 he paid child support of $450 for each child through the Court and in addition expended $500 for each child's support and maintenance. The total amounts expended by petitioner for the support of his children were as follows: Brenda, $1,136 for 1960 and $950 for 1961; Keith, $931 for 1960 and $950 for 1961. The various items of support for the children furnished by the Sanderfords during the tax years before us included rent or housing, utilities, telephone, food, clothing, dry cleaning and laundry, recreation and vacations, and a variety of other usual and necessary support expenses for children of the respective ages of Brenda and Keith. Some of the expenses were based on recollections and estimates of Mary and William and others were supported by documentary evidence. The following expenditures were made by the Sanderfords for the support and benefit of Brenda and Keith during the taxable years before us: Brenda
Keith
1960
1961
1960
1961
Food
$ 400
$ 400
$ 400
$ 400
Clothing
375
375
300
300
Recreation and vacations
85
75
85
75
Gifts and allowances
150
150
150
150
Miscellaneous
250
250
250
250
Lodging
300
400
300
400
$1,560
$1,650
$1,485
$1,575
*142 Of the total amount expended by the Sanderfords as above found, petitioner paid Mary through the Court, as previously indicated, the following sums for support of the children: Brenda
Keith
1960 $636 $431
1961
450
450
The net support therefore by the Sanderfords each year for Mary's children was as follows: Brenda
Keith
1960
$1,560
$1,485
Less petitioner's payments
through Court
636
431
Sanderfords' contribution
$ 924
$1,054
1961
$1,650
$1,575
Less petitioner's payments
through Court
450
450
Sanderfords' contribution
$1,200
$1,125
The total support provided by petitioner and by the Sanderfords for the children in 1960 and 1961 was as follows: Brenda
Keith
1960
Sanderfords
$ 924
$1,054
Petitioner
1,136
931
Total
$2,060
$1,985
1961
Sanderfords
$1,200
$1,125
Petitioner
950
950
Total
$2,150
$2,075
Petitioner provided more than one half of Brenda's support for 1960 but less than one half of her support for 1961 and less than one half of Keith's support for both 1960 and 1961. We find as additional facts that petitioner incurred the *143 following unallocated expenses in the years indicated. However, for reasons which will appear in our Opinion, infra, no portion of these expenses may be deemed to have been in support of his children. They were petitioner's personal living expenses: 1960
1961
Lodging
$582.00
$942.26
Utilities
172.80
180.00
Transportation
156.00
156.00
Home Furnishings
270.00
100.00
Opinion A $600 exemption is allowed a taxpayer under section 151 for each of his dependents. This term is defined in section 152 to include individuals "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *" Sons and daughters of taxpayers are two of the categories of individuals specified. The only question presented in this case is the purely factual one of whether petitioner supplied over one half of the total support for his children or either of them in both of the years before us. Petitioner bore the burden of proof on this question, and the outcome is necessarily based solely upon our factual determinations from all of the evidence of record. Except as indicated in our Findings of Fact, petitioner *144 has not sustained his burden of proof. We conclude and hold that he did not supply over one half the total support of his son, Keith, in either of the two years before us, nor did he supply over one half of Brenda's support for 1961. We recognize that it is not easy to determine precisely as to items of support furnished where the expenditures are based upon recollections of past events and estimates as to alleged expenditures. The evidence of record here has been carefully examined and all considered with due regard for conflicts and discrepancies. Using our best judgment with due regard for the respective interests of the witnesses, their demeanor and appearance before us and all other documentary evidence, we have been able to make a finding as to which parent furnished more than one half of the support of each child as to each year in issue. We hold as indicated that petitioner has met his burden of proof as to Brenda's dependency exemption for 1960 but that he has failed to meet that burden for Brenda as to 1961 or as to Keith for either 1960 or 1961. He is thus entitled to one dependency exemption for 1960 and to none for 1961. This case is not one in which petitioner is *145 unsuccessful because he is unable to prove the range of total support provided to his putative dependents. Cf. Commissioner v. Mendel, 351 F. 2d 580 (C.A. 4, 1965), reversing 41 T.C. 32 (1963); Edward J. Pillis, 47 T.C. 707 (Mar. 31, 1967). Here, the divorced wife and her present husband testified in Court on respondent's behalf and we have been able to draw an accurate approximation of both total support and petitioner's contributions thereto. It is also to be noted that petitioner did incur lodging, utility, transportation and furniture expenses in both 1960 and 1961 which cannot be considered as support contributions under sections 151 and 152. The mother of the two children in the instant case had been awarded their custody and it was her duty to provide a home for them. Accordingly, petitioner may not allocate any portion of his lodging costs (to include furniture and utility expenses) as "support" for income tax purposes. Aaron F. Vance, 36 T.C. 547 (1961). What we said in Vance at 550 is appropriate here. [The divorced mother] had custody of the children and the duty to provide them with a place to live. Petitioner *146 was merely exercising his personal rights of visitation when he brought the children to his own home and he was under no necessity to provide a home for them. Generally, we think automobile expenses incurred in exercising visitation rights are not includable as elements of support, regardless of whether the visitation occurs at the home of the custodial parent, the home of the parent not having custody, or at some other location. Vance, supra at 550; Raymond M. McKay, 34 T.C. 1080, 1083 (1960). The automobile expenses do not differ essentially from the expenses we have grouped together, supra, as lodging expenses. However, under the facts of this case, we think that a portion of the automobile expenses which petitioner incurred each weekend might properly be allocable to the children's support. Petitioner apparently used his automobile while his children were with him on weekends to take them to church, secure meals, and for other purposes usually thought to fall within the scope of providing support. Unfortunately, petitioner has not attempted to prove what proportion of his weekend mileage was for support purposes. Therefore, we have no basis upon which *147 to make an accurate or even approximate allocation of this particular support item. Further, we think the principle of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), is not applicable to dependency cases in computing support. In Bernard C. Rivers, 33 T.C. 935, 937-938 (1960), we refused to conjecture as to total support. Here we have been able to make findings as to total support but refuse to conjecture as to a particular item of support. Even if we were to make a "reasonable" allocation of the weekend automobile expenses toward the children's support, petitioner's evidence would not bridge the considerable gap which exists between the support provided by him and the support provided by the Sanderfords. See our Findings of Fact, supra. We might also note that while the parent exercising visitation rights is not entitled to include the lodging and related items provided by him during weekends as "support," Vance, supra, the facts of this case suggest that during the year 1961 some of the expenses incurred by petitioner in connection with his farm might be included as part of the children's total support because the farm purchase was so *148 intimately related with their recretation. However, petitioner has neither argued this point nor presented evidence on which we can make a reasonable allocation. What we said, supra, regarding the weekend automobile expenses and petitioner's failure of proof with respect thereto is of equal validity here. In the present state of the statutory law, despite burdensome and highly commendable contributions on his part toward the support of his children, petitioner may not claim his two children as dependents in either of the two years before us except as the evidence before us has established that he furnished more than one half of Brenda's total support for 1960. Respondent's determination as to the other adjustments is upheld. Due to concessions made by the petitioner, and to reflect the necessary adjustments to be made in accordance with this Opinion, Decision will be entered under Rule 50. Footnotes
1. Unless otherwise noted, all statutory references herein are to the Internal Revenue Code of 1954.↩