WARD GULVIN and ESTATE OF DOROTHY GULVIN, DECEASED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gulvin v. Commissioner
Docket No. 8407-77.
United States Tax Court
T.C. Memo 1980-111; 1980 Tax Ct. Memo LEXIS 474; 40 T.C.M. (CCH) 126; T.C.M. (RIA) 80111; April 10, 1980, Filed Robert S. Bolt, for the petitioners. Stuart B. Kalb, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency of $1,238.21 in the Federal income tax for calendar year 1973 for Dorothy Gulvin, now deceased, and Ward Gulvin. Some of the issues raised by the pleadings have been disposed *476 of by the parties, leaving for our decision only whether under sections 151 and 152, I.R.C. 1954, [1] petitioners are entitled to claim five dependency exemptions, one for each of five of their children who, in the years in issue, resided in a foster care home and on whose behalf the foster parent received support funds from Florida under the State Foster Home Care Program. All of the facts have been stipulated and are found accordingly. Petitioners in this case are Ward Gulvin (petitioner) and the estate of Dorothy Gulvin, deceased. Dorothy Gulvin, formerly the wife of Ward Gulvin, died on March 25, 1975. Ward Gulvin, who resided in New Port Richey, Florida at the time of filing the petition in this case, filed a joint Federal income tax return with his now-deceased wife, Dorothy, for calendar year 1973 with the Internal Revenue Service Center, Chamblee, Georgia. In 1973, Dorothy and Ward Gulvin had 7 children, Jeffrey, Joyce (20 years old), Glen (born August 18, 1954), Neal (born March 19, 1956), *477 Arthur (born September 21, 1957), Sharon (born December 20, 1960), and Dennis (born September 10, 1962), of whom the latter six lived outside the family home. Joyce was a college student at the University of South Florida, and she resided at or near the university most of 1973. Throughout 1973, Glen, Neal, Arthur, Sharon, and Dennis lived in a foster care home in Dade City, Florida, where they had been placed prior to 1973 by Order of the Pasco County (Florida) Juvenile Court. Between January 1, 1973, and March 2, 1973, these children's foster home care came within the jurisdiction of the Pasco County Juvenile Court Foster Parent Program. However, on March 2, 1973, jurisdiction shifted to the Florida Department of Health and Rehabilitative Services, Division of Family Services, Child Welfare Services, Foster Home Care Program, where jurisdiction remained through yearend. During 1973 Ward Gulvin was over 65 years of age, and throughout that year he received old-age insurance benefits under section 202(a) of Title II of the Social Security Act, 42 U.S.C. sec. 402 (1935), as amended. [2] Pursuant to section 202(d) of Title II of the Social Security Act, *478 42 U.S.C. sec. 402 (1935), as amended, [3] on behalf of the five Gulvin children within their jurisdiction, the Pasco County Juvenile Court and the Division of Family Services received child insurance benefit payments from the United States government. On the third day of each month, January 1973 through and including May 1973, the Social Security Administration issued the child insurance benefit checks, each in the amount of $40.10, to the Pasco County Juvenile Court. The checks issued January through March, totaling $120.30 per child, were then spent for the support of the children. However, the April 3 and May 3, 1973, checks were returned to the Social Security Administration and cancelled. *479 In subsequent months the Social Security Administration submitted each of the child insurance benefit checks to the Division of Family Services as follows: Child
Date
Amount
Glen R. Gulvin
9-24-73
$196.90
Robert N. Gulvin
same
same
Arthur E. Gulvin
same
same
Sharon R. Gulvin
same
same
Dennis W. Gulvin
9-24-73
$196.90
Glen R. Gulvin
11-3-73
$ 77.80
Robert N. Gulvin
same
same
Arthur E. Gulvin
same
same
Sharon R. Gulvin
same
same
Dennis W. Gulvin
same
same
Glen R. Gulvin
12-3-73
$ 38.90
Robert N. Gulvin
same
same
Arthur E. Gulvin
same
same
Sharon R. Gulvin
same
same
Dennis W. Gulvin
same
same
The September checks represented retroactive payment for June, July, and August 1973, while the November check constituted the amounts due for September and October 1973. No payment was issued for May 1973. Florida's Division of Family Services commingled the child insurance benefits with funds earmarked by the State for the children's foster home care. Beginning March 15, 1973, and continuing on a monthly basis through yearend, the Florida Department of Health and Rehabilitative Services, Division of Family Services, on *480 behalf of the five Gulvin children issued checks to Ms. Bonnie Elkins, the children's foster parent. During that period the Division of Family Services contributed on behalf of each child the following amounts: $1,229.84 for Glen R. Gulvin, [4] $1,229.84 for Robert N. Gulvin, $1,226.70 for Arthur E. Gulvin, $1,226.70 for Sharon R. Gulvin, and $917.24 for Dennis W. Gulvin. Except for $6.28 spent on clothing, those funds were expended for the children's board. Aside from the above receipts, no other direct or indirect support payments were made to any of the children. The gross income for each of the children *481 during 1973 was less than $750. On their income tax return for 1973 Dorothy and Ward Gulvin claimed 10 exemptions, including a personal exemption for each spouse, a "65 or over" exemption for Ward Gulvin, a dependency exemption for their child, Jeffrey, who resided with them throughout 1973, and exemptions for each of their nonresident six children. In his notice of deficiency respondent disallowed the final six exemptions with the explanation that petitioners did not meet the support test of section 152. In the stipulation, respondent conceded that petitioners were entitled to one of the previously contested dependency exemptions for petitioners' daughter, Joyce. The claimed dependency exemptions for the five children who resided in the foster care home throughout 1973 are presently in issue. In computing a taxpayer's taxable income, section 151 allows as a deduction certain personal and dependency exemptions. As effective in 1973, section 151(e)(1) provided that a taxpayer is entitled to an exemption of $750 for each dependent whose gross income in the particular calendar year is *482 less than $750, or who is a child less than 19 years of age at yearend, or who as a child, regardless of age is also a student. [5] For purposes of section 151(e) the term "dependent" is defined in section 152 to include a son or daughter of a taxpayer "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Section 152(a)(1). Although the meaning of "supprt" is not defined in the Code, Income Tax Regulation 1.152-1(a)(2)(i), as adopted by the courts, regards support as including "food, shelter, clothing, medical and dental care, education, and the like." Turecamo v. Commissioner, 554 F.2d 564, 569 (2d Cir. 1977), affg. 64 T.C. 720 (1975); Seraydar v. Commissioner, 50 T.C. 756, 761 (1968). *483 Proof of dependency status under section 152(a) which would qualify a taxpayer for the consequent exemption deduction of section 151(e) depends upon four factors: (1) the aggregate amount of money or property received by the claimed dependent from all sources, (2) the sums actually applied for the support of the claimed dependent, (3) the sources which contributed to those total support costs expended on behalf of the claimed dependent, and (4) a demonstration that the taxpayer provided over half of the total costs dispersed for the support of the claimed dependent. Archer v. Commissioner, 73 T.C.     (Feb. 28, 1980); Turecamo v. Commissioner, supra at 569; Carter v. Commissioner, 55 T.C. 109, 112 (1970). The parties agree that all moneys used to support each of the five claimed dependents in issue originated exclusively from the United States Social Security Administration and the State of Florida. Those amounts contributed by those two sources and expended for the support of the five dependents in issue totaled $1,350.14 for Glen R. Gulvin, *484 $1,350.14 for Robert N. Gulvin, $1,347 for Arthur E. Gulvin, $1,347 for Sharon R. Gulvin, and $1,037.54 for Dennis W. Gulvin. Petitioners confirm that neither Dorothy Gulvin nor Ward Gulvin directly contributed any money used to support the five children. Petitioners recognize that the courts have held that state welfare benefits expended for the acquisition or provision of basic human necessities are treated in the support calculation as provided by the payor. For example, in Donner v. Commissioner, 25 T.C. 1043 (1956), we treated payments made by the Wisconsin State Department of Public Welfare in 1950 and expended exclusively for the support of one of the taxpayers' children as support from a source other than the taxpayers. Likewise, moneys paid to an indigent parent under an Aid to Families with Dependent Children (AFDC) program, subchapter IV of the Social Security Act, 42 U.S.C. secs. 601-644 (1935), as funded by Federal and state moneys, are attributable to support provided by the state rather than by the indigent parent. Lutter v. Commissioner, 61 T.C. 685 (1974), affd. per curiam, 514 F.2d 1095 (7th Cir. 1975), *485 cert. denied, 423 U.S. 931 (1975). In Carter v. Commissioner, 55 T.C. 109 (1970), we held state-provided old-age assistance payments actually expended by the taxpayer's grandmother on support items to constitute for purposes of section 152 support furnished by the state. Similarly, in Newman v. Commissioner, 28 T.C. 550 (1957), we held that a taxpayer was not entitled to claim her niece and nephews as dependents because more than one-half of the dollar value of the children's support was furnished by the institutional homes in which they lived. [6]
*486 Petitioners raise the question of whether for purposes of section 151 and 152 foster care payments made by a state to or on behalf of a recipient of the age of minority, where by operation of state law the estate of the minor's parent is obligated to repay the state a portion or all of the monetary benefits, constitute support furnished by the parent in the year the funds are received by the beneficiary. We will later discuss petitioner's contention with respect to the liability of his estate to repay the moneys paid by the State for the support of his children. However, even if we were to assume that under Florida law the State could follow procedures to collect from petitioner or his estate the amounts expended by the State in support of petitioner's minor children during 1973, we would conclude that such fact would not cause these amounts to constitute support that these children "received" from petitioner in 1973 as required by section 152 for entitlement to the dependency exemptions. In Donner v. Commissioner, 25 T.C. 1043 (1956), the facts showed that one of the taxpayers' children was committed to a training school during 1950. In that year, the taxpayers *487 spent less than or equivalent to $50 for the support of their invalid child. Additionally, the taxpayers submitted $10 to the Wisconsin State Department of Public Welfare to reimburse it for an amount spent on the support of the taxpayers' child. During 1950, a total of $771.14 was expended by the Wisconsin State Department of Public Welfare for the support of the child. In June 1954, the County Court, Milwaukee County, Wisconsin, ordered taxpayer John L. Donner to submit further installments to the Wisconsin State Department of Public Welfare to fully reimburse it for sums expended to support his child since early 1950. The taxpayers had claimed a dependency exemption in their Federal income tax return for 1950 for their invalid child, and they argued that the debt created in 1954 retroactively validated the claimed exemption. In disallowing the dependency exemption we explained (at 1044-1045): It is clear from the stipulated facts that petitioners, in 1950, contributed far less than one-half of the support of Julie Ann for that year. It is equally clear that the language of section 25(b)(3), [Internal Revenue Code of 1939] in part, defining a "dependent" as a person "over *488 half of whose support for the * * * year * * * was received from the taxpayer" required something more than an unfulfilled duty or obligation on the part of the taxpayer to qualify him for allowance of the dependency exemption. The subsequent securing of a judgment against John L. Donner by the State Department of Public Welfare in 1954, for reimbursement of its expenditures for Julie Ann likewise presents no basis for the allowance of such exemption to petitioners for 1950. In a number of cases we have stressed the fact that it is only support "received" from the taxpayer in the year for which the dependency exemption is claimed that may be considered in determining whether over half of a child's support was received from the taxpayer. In McKay v. Commissioner, 34 T.C. 1080, 1083 (1960), we held that a child had not received $52.50 of support from the taxpayer in 1957 under the facts there present. The facts showed that shortly prior to the close of the year the taxpayer drew and delivered a check for $52.50 to the clerk of the court. However, the amount was not paid *489 to the person with custody of the child until the following year because of a provision in the court decree requiring that the funds were not to be paid by the court to the person having custody of this child until the taxpayer's check had cleared. See also Casey v. Commissioner, 60 T.C. 68 (1973), in which we held that where a taxpayer in the year 1967 paid only $450 of the $1,200 required by a divorce decree for the support of his child, the child received only $450 support from the taxpayer in 1967 even though in 1968 he paid the arrearage of $750. The arrearage constituted reimbursement to the custodial parent for amounts she expended in 1967 and not support received by the child in 1968. We therefore conclude that the five minor children of petitioner who were living in a foster home during 1973 did not "receive" over half of their support from petitioner in that year, irrespective of whether there might have existed some general obligation of petitioner to reimburse the State for their support if the State had taken the necessary steps to collect from petitioner or his estate. Petitioners' reliance on Rev. Rul. 58-404, 1958-2 C.B. 56, is misplaced. *490 That Revenue Ruling merely held that when a taxpayer supplied an item of support to a child in one year but did not pay the bill for the item until the following year, the support was "received" by the child in the year the item was supplied rather than in the year for which it was paid. See Seraydar v. Commissioner, 50 T.C. 756, 761 (1968), holding to this same effect, citing Rev. Rul. 58-404, supra, and Rev. Rul. 67-61, 1967-1 C.B. 27, clarifying Rev. Rul. 58-404, supra, by specifically pointing out that for the item of support to have been "received" by the claimed dependent from the taxpayer in the year involved, the taxpayer's obligation to pay for the item "furnished" in that year must be unconditional. In Rev. Rul. 67-61, supra, it was pointed out that an obligation of a taxpayer (such as a requirement of a divorce decree) to pay an amount, did not remove the liability from the conditional category nor cause the amount to be "received" by the claimed dependent within the meaning of section 152 until the amount was actually paid. As below discussed, in the instant case petitioner has totally *491 failed to show that he did have any specific and unconditional obligation to repay the State of Florida for the amounts paid by the State for the care of his five minor children in a foster home. Petitioners' theory of entitlement to the five questioned dependency exemptions is constructed upon numerous propositions. They suggest that pursuant to the Florida Statutes payments made by the State through its Foster Home Care Program are equivalent to public assistance payment or benefit. Petitioners indicate that the phrase "public assistance payment or benefit" is not defined in Title XXVIII, chapter 409, of the Florida Statutes, which contains the laws regarding family services.However, citing Florida Statutes section 409.345 petitioners assert that acceptance of public assistance payments or benefits creates a debt in the recipient repayable from the recipient's estate after death. [7] They emphasize that in Florida a father is responsible for the support of his minor children. [8] They argue that it follows under the provisions of section 409.345 of the Florida Statutes that petitioner owed a debt to the State for the payments by the State to the foster home, and therefore his *492 minor children received this portion of their support from him. *493 As effective in the year in issue, section 409.165 is the only section in chapter 409, Florida Statutes, which mentions foster home care for children. [9] That statute refers only to children placed in a foster home by the Division of Family Services with the voluntary written consent of parents or guardians. However, placement of the Gulvin children in the foster home was ordered by the Pasco County Juvenile Court within its jurisdiction as provided by section 39.02, Florida Statutes, as enacted in 1951. Therefore, we are of the view that placement of the Gulvin children in the foster home does not come within the ambit of Florida Statutes section 409.165. *494 Florida Statutes section 409.185[10] enumerates the eligibility requirements for financial assistance. [11] Pursuant to that Florida Statute to qualify for financial assistance benefits a needy person must meet the conditions of either section 409.205 (old-age assistance), section 409.215 (aid to the blind), section 409.225 (aid to the permanently and totally disabled), section 409.235 (aid to families with dependent children), or section 409.255 (aid to families with dependent children; father unemployed). While petitioners apparently realize that payments for children in foster care facilities are not included within any of these cataloged statutes, they take the position that the list is not all-inclusive. Because we have found nothing in Florida legislation, case law, or the practices of the Division of Family Services to support petitioners' contention, we are of the contrary opinion. As a result, we conclude that Florida Foster Home Care Program payments are not public assistance within the meaning of section 409.185, Florida Statutes, and that the payment of the support moneys for the Gulvin children by the Florida Division of Family Services did not create a debt in petitioners *495 within the meaning of section 409.345. *496 This determination is further supported by the fact that until the 1975 enactment of section 402.33, Florida Statutes, effective as law on July 1, 1975, fully 18 months after the tax year in issue, the Department of Health and Rehabilitative Services, of which the Division of Family Services is a subdivision, had no specific mechanism or authority to force any parent of a minor receiving Foster Home Care Program benefits and payments to reimburse the Department for its services provided and moneys expended. [12] There was no predecessor provision to Florida Statutes section 402.33. Therefore, under the Florida Statutes as effective in the tax year in issue, no statute specifically provided for the creation of a debt payable by petitioners because of the payments by the Division of Family Services for the foster care of the Gulvin children. [13]
*497 The policy behind the Foster Home Care Program payments is to provide for the general welfare of the target beneficiary. That program protects children who cannot be dependent upon their parents for any number of reasons. Thus, the primary benefit is to the dependent. The manner in which the Foster Home Care Program funds are spent on behalf of the dependent is the critical factor. The moneys provided by the Florida Division of Family Services to each of the five Gulvin children were primarily expended for the children's board, an expenditure within the meaning of "support." Income Tax Regs., section 1.152-1(a)(2)(i); Seraydar v. Commissioner, 50 T.C. 750, 761 (1968); Turecamo v. Commissioner, 554 F.2d 564, 569 (2d Cir. 1977), affg. 64 T.C. 720 (1975). On behalf of Robert, Arthur, Sharon, and Dennis Gulvin those foster care payments constituted approximately 91 percent of each child's total support in calendar year 1973. Similarly, the Foster Home Care Program funds provided approximately 75 percent of the 1973 aggregate support of Glen Gulvin. Therefore, rather than petitioners, Florida provided *498 over one-half of the support of the five Gulvin children in 1973. Alternatively, petitioners argue that those child insurance benefit payments received by the children under subchapter 2, Social Security Act, 42 U.S.C. sec. 402(d) (1935), should be considered as support payments received from petitioners. Respondent has consistently taken the contrary position. (See footnote 6 for discussion of old-age and survivors insurance benefit payments.) Because none of the five children received more than one-half of his upport from the child insurance benefit payments, it is unnecessary to further discuss this matter. In accordance with the above, we hold that the five Gulvin children who resided in a foster care home in 1973 did not receive more than one-half of their support from petitioners in 1973, and therefore petitioners are not entitled to the claimed dependency exemption deductions for these children. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩
2. Section 202(a) of Title II of the Social Security Act, as amended, 42 U.S.C. sec. 402, reads as follows: Sec. 402. Old-age and survivors insurance benefit payments (a) Old-age insurance benefits. Every individual who-- (1) is a fully insured individual (as defined in section 214(a) [42 USCS sec. 414(a)]). (2) has attained age 62, and (3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained the age of 65, shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August 1950 in which such individual becomes so entitled to such insurance benefits and ending with the month preceding the month in which he dies. Except, as provided in subsec. (q) and subsection (w), such individual's old-age insurance benefit for any month shall be equal to his primary insurance amount (as defined in section 215(a) [42 USCS sec. 415(a)↩]) for such month. 3. Section 202(d) of Title II of the Social Security Act, as amended, 42 U.S.C. sec. 402, reads in part as follows: (d) Child's insurance benefits. (1) Every child (as defined in section 216(e) [42 USCS sec. 416(e)]) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child-- (A) has filed application for child's insurance benefits, (B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 223(d) [42 USCS sec. 423(d)]) which began before he attained the age of 22, and (c) was dependent upon such individual-- (i) if such individual is living, at the time such application was field, * * *
shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits * * *.↩
4. Glen R. Gulvin attained majority age by operation of law on July 1, 1973. During 1973, aside from the child insurance benefit payments totaling $120.30 paid to the Pasco County Juvenile Court, the funding mechanisms for Glen Gulvin's support consisted exclusively of the following: ↩
Florida Division of Family Services
(prior to July 1, 1973)
$392.70
Florida Division of Family Services
(after July 1, 1973, attributable
to Social Security)
313.60
Florida Division on Family Services
(after July 1, 1973, not attributable
to Social Security)
523.54
5. Section 151(e) reads in pertinent part as follows: SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. * * *
(e) Additional Exemption for Dependents.-- (1) In general.--An exemption of $750 for each dependent (as defined in section 152)-- (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $750, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. * * *
(3) Child defined.--For purposes of paragraph (1)(B), the term "child" means an individual who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the taxpayer. (4) Student and educational institution defined.--For purposes of paragraph (1)(B)(ii), the term "student" means an individual who during each of 5 calendar months during the calendar year in which the taxable year of the taxpayer beings-- (A) is a full-time student at an educational institution; or (B) is pursuing a full-time course of institutional on-farm training under the supervision of an accredited agent of an educational institution or of a State or political subdivision of a State. For purposes of this paragraph, the term "educational institution" means only an educational institution which normally maintains a regular faculty and curriculum and normally has a regularly organized body of students in attendance at the place where its educational activities are carried on.↩
6. The Internal Revenue Service has applied this same principle to (1) child insurance benefit payments pursuant to section 202(d) of Title II of the Social Security Act, 42 U.S.C. sec. 402, rev. Rul. 74-543, 1974-2 C.B. 39, and (2) benefits received under the Federal Old-Age, Survivors, and Disability Insurance (OASDI), subchapter 2 of the Social Security Act, 42 U.S.C. secs. 401-431, Rev. Rul. 58-419, 1958-2 C.B. 57, expanded by Rev. Rul. 64-222, 1964-2 C.B. 47; Rev. Rul. 57-344, 1957-2 C.B. 112. In each of those Revenue Rulings the benefits received under the Social Security Act were attributable to the beneficiary. Similarly, we held in Markarian v. Commissioner, 42 T.C. 640 (1964), affd. 352 F.2d 870 (7th Cir. 1965), that non-taxable income, pension and social security benefits, of a mother living with her son were not funds attributable to the taxpayer-son in calculating the support furnished by the taxpayer for purposes of section 152↩.
7. Section 409.345, Florida Statutes, as effective in 1973, reads in part: 409.345 Public assistance payments to constitute debt of recipient (1) Claims.--The acceptance of public assistance payments or benefits shall create a debt of the person accepting the payments or benefits, which debt shall be enforceable only after the death of the recipient. After the death of the person and within the time prescribed by law, the division may file a claim against the estate of the recipient for the total amount of public assistance paid to or for the benefit of such recipient, reimbursement for which has not been made. Claims so filed shall take priority as class seven claims as provided by section 733.20(1)(g). (2) Claim against estate.--Before any application for public assistance is approved, the applicant shall agree that all such benefits paid to him or on his behalf shall constitute a claim against his estate enforceable according to law by the division. Such agreement may be contained in the application signed by the applicant. The debt thereby created shall be enforceable only by claim filed against the estate of the recipient after his death or by suit to set aside a fraudulent conveyance, as defined in subsection (4). (3) Discharge of debt.--The debt created by this section shall be discharged one year after the death of the debtor unless the division shall have instituted probate proceedings as a creditor or filed a timely claim against the estate of the debtor or instituted a suit to set aside a fraudulant conveyance as defined in subsection (4). ↩
8. Petitioners cite a number of custody and divorce actions brought in the Florida courts to support the principle that a parent is responsible for the support of his children. Those citations include Finn v. Finn, 294 So.2d 57 (Fla. Dist. Ct. App. 1974); Weinstein v. Weinstein, 148 So.2d 737 (Fla. Dist. Ct. App. 1963); White v. White, 296 So.2d 619 (Fla. Dist. Ct. App. 1974); Morris v. Stone, 236 So.2d 455↩ (Fla. Dist. Ct. App. 1970).
9. Section 409.165, Florida Statutes, states: 409.165 Institutional care for children (1) The division of family services may cooperate with all child service institutions or agencies within the state which meet the standards and regulations for proper care and supervision prescribed by the division for the well-being of children. (2) With the written consent of parents or guardians, the division, under rules and regulations properly established, may place a child in a home or institution, private or public, paid or free, or in a foster home, under such conditions as shall be determined to be for the best interests or the welfare of the child. Any child placed in an institution or in a family home by the division or its agency may be removed by like authority and such disposition made as shall be for the best interest of the child, including the transfer to another institution, another home, or the home of the child.↩
10. As effective in 1973, section 409.185, Florida Statutes, reads in pertinent part: 409.185 Determination of eligibility for financial assistance; exclusions (1) The department, through the division, shall provide financial assistance to needy persons who: (a) Do not have sufficient income or other resources, as determined by the department, to provide reasonable subsistence compatible with decency and health. (b) Have not made an assignment or transfer of property for the purpose of rendering or keeping himself eligible for assistance under this chapter. Any such assignment or transfer of property within two years immediately prior to the receipt of assistance or during receipt of assistance pursuant to the provisions of this chapter shall constitute a rebuttable presumption that such assignment or transfer of property was made for the purpose of rendering or keeping the applicant eligible for assistance under this chapter. (c) Are residing in this state with intent to remain. (d) Meet the requirements of sections 409.205, 409.215, 409.225, 409.235, and 409.255 and the rules and regulations of the department. No person shall receive financial assistance for himself under more than one of these sections during the same month. ↩
11. Although petitioners only broadly refer to the Florida Statutes as support for their proposition that Foster Home Care Program benefits are equivalent to public assistance, we find no other statute aside from section 409.185, Florida Statutes↩, that would lead to such a conclusion.
12. Specific authorization in 1975 resulted from first enactment of sec. 402.33, Florida Statutes, which reads, as amended in 1976 and 1977: 402.33 Department authority to charge fees for services provided (1) It is the intent of the Legislature that whenever practical the Department of Health and Rehabilitative Services shall require: (a) The client; (b) Parents, if the client is a minor; or (c) Spouse of the client and third party payors to participate in the cost of services or to pay fees for services provided by the department. (2) The Department of Health and Rehabilitative Services may at its discretion and in accordance with rules and regulations established by the department charge fees for any service provided by the department. Fees will be reasonably related to the cost of providing the service and the client's abilit to pay unless: (a) The fee is set by Florida Statutes. (b) An adjustment is necessary to assure maximum utilization of federal funds. (3) Annually, the Department of Health and Rehabilitative Services shall determine or establish the: (a) Cost of providing services for which charges will be made. (b) Uniform criteria for determining ability to pay or to participate in the cost of service. (4) All persons receiving services for which fees have been established pursuant to this act shall be liable for the actual cost of the service provided. The department shall only collect from third-party payors or from clients or parents or spouse of the client fees consistent with the client's, parents', or spouse's ability to pay. Parents of minors receiving services in a program for which fees have been established shall pay fees consistent with their ability to pay unless the service was requested by the minor without parental consent. The department is authorized to require financial information from clients, parents, legal guardians, or other financially responsible persons in order to determine ability to pay in accordance with uniform criteria. (5) The department shall actively assist clients in securing benefits from third party payors. Eligibility for departmental programs does not reduce otherwise payable obligations of third party payors who shall be billed and liable for the total cost of the service. Revenue received by the department from third party payors to cover cost of services provided shall be deducted from the total cost of providing services to the client. In no event shall a fee charged to a client exceed the difference between the total cost of providing services to the client and the revenue received from third party payors. (6) Payment of charges shall not be a prerequisite to treatment or care. (7) (a) Upon recordation with the clerk of the circuit court in the county in which the property is located, unpaid fees shall constitute a lien upon all property, both real and personal, of any client who has received any service for which the department charges fees. Such services shall constitute a claim against the client to be determined by the department. Said liens and claims shall be enforced on behalf of the state by the department. The lien and claim herein created shall be continuing obligations until 3 years after the client's demise, unless earlier satisfied. (b) Upon the death of a client against whom the department has a claim, a caveat may be filed without cost by the department. In the event that the department effects recovery, the Clerk of the Circuit Court shall be reimbursed the statutory filing fee for caveats. [Emphasis added.] ↩
13. In their petition petitioners assert that the judge presiding in the Pasco County Juvenile Court hearings with respect to the foster care of the Gulvin children indicated that Mr. Gulvin or his estate could be held responsible to reimburse the State for its expenditures made on behalf of the children's support. As prescribed by Florida Statutes, section 39.11-(2)(A)(2), as amended in 1971 and in effect in 1973, the Juvenile Court could: (2)(a) When any child shall be adjudicated by a juvenile court to be a dependent child, the juvenile court having jurisdiction of the child shall have the power, by order, to: 5. Order the natural or adoptive parents of such child, or the natural father of an illegitimate child who has acknowledged his paternity in writing before the juvenile court judge, or the guardian of such child's estate, if possessed of assets which under law may be disbursed for the care, support and maintenance of such child, to pay the person or institution having custody of such child reasonable sums of money at such intervals as the court may consider adequate and proper for the care, support, maintenance, training and education of such child. The court, in making such order, shall consider the circumstances and ability of such parents, or the natural father of an illegitimate child, to pay and the value of assets of the guardianship estate of such child, and when such order affects the guardianship estate, a certified copy of such order shall be delivered to the county judge having jurisdiction of such guardianship estate. However, the record does not include any court order that creates such an obligation payable by Mr. Gulvin or his estate. Accordingly, we conclude that while the Pasco County Juvenile Court had the authority before and during 1973 to cause Mr. Gulvin or his estate if financially capable to pay for the care of the Gulvin children, nothing in this record shows that this was in fact done. However, as heretofore discussed, if such an order had existed, since Mr. Gulvin children would not have "received" their support from him in that year.↩