RAYMOND M. McKAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81968. Filed September 22, 1960.

*John L. Carey, Esq.*, for the petitioner.
*George H. Becker, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The only question presented is the factual one as to whether the petitioner furnished more than half of the cost of the support of his daughter, Sharron Lynn, in 1957 so as to entitle him to the deduction of a dependency exemption under section 152(a) of the Internal Revenue Code of 1954.[1]

The petitioner's contentions on brief are not entirely clear with respect to the items constituting his daughter's support, but he appears to take the position that the amounts listed below in the first

---

[1] SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer * * *:

(1) A son or daughter of the taxpayer, * * *

column were contributed by him for her support and that the amounts in the second column comprised her total support in the taxable year involved:

| Petitioner's contributions | | Total support | |
| --- | --- | --- | --- |
| Payments to clerk of Circuit Court | $910.00 | Fair market value of lodging | $286.00 |
| | | Hospital insurance | 11.25 |
| Cash of $2 per visit | 40.00 | Medical expense | 75.00 |
| Birthday gift | 10.00 | Church | 26.00 |
| Sweaters | 15.96 | Food | 350.00 |
| | | Clothing | 300.00 |
| | | School expense | 188.00 |
| | | Camp | 42.00 |
| | | Sweaters, cash, and birthday gift from petitioner | 65.96 |
| | 975.96 | | 1,344.21 |

The evidence, as we view it, indicates that during the taxable year the petitioner provided Sharron Lynn with support in the amount of $973.46 and that her total support was $2,443.37. We have so found.

The difference of $2.50 between the $975.96 which the petitioner claims to have contributed and the $973.46 which we have found he actually supplied results from our inclusion of $50 of items covered by petitioner in his testimony but omitted in his tabulation on brief ($40 entertainment and a $10 coat), and our exclusion of $52.50 of the claimed support payments. Although the petitioner drew checks payable to the court clerk in the total amount of $910, Claire in fact received only $857.50 in 1957, because the clerk was required by the court to wait until the petitioner's personal check had cleared before any transmittal of the amount thereof to Claire. Under section 152 (a), the year in which the support was received is controlling in determining whether over half of the dependent's support was received from the petitioner since a "dependent" is defined in that section as a person "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." See Rev. Rul. 58–404, 1958–2 C.B. 56. The petitioner has produced no evidence to show that at any time the clerk failed to make the funds available to Claire promptly after a check had cleared. On the facts, we accordingly conclude and hold that the support provided by the petitioner in 1957 by payments through the clerk of the court was in the amount of $857.50.

The petitioner made some reference on brief to his traveling expenses of $360 from Mishawaka to Fort Wayne and return which he incurred on his weekend visits with Sharron Lynn. These expenditures were for his personal benefit rather than for her support, and, as such, have not been included as elements of her support.

Although we are in substantial agreement with the petitioner as to the amount he spent for Sharron Lynn's support, it appears to us that he has understated the total support provided her. We have found that the fair rental value of her lodging was $600 rather than $286 as he contends. See *William C. Haynes*, 23 T.C. 1046, and *Emil Blarek*, 23 T.C. 1037. Considering that the house in which Claire and Sharron Lynn lived was in a desirable location, was furnished, and was comfortable and spacious, we believe that the rental value of the house was at least $140 per month, as Claire testified, and such being the case, that $50 per month was fair and reasonable for Sharron Lynn's occupancy, and we have so found. Petitioner does not dispute as an item of support furnished the inclusion of a proper amount as representing the lodging supplied Sharron Lynn, but based on a rental of $5.50 per week which he had paid for a room in a boardinghouse in Fort Wayne during 1954 and 1955, he argues that the fair value of the lodging furnished was no more than $286. There he was allowed to watch television in the living room and to use the kitchen for making snacks or coffee. In contrast, Sharron Lynn had use of the entire house for entertaining her friends. The house had a musicroom in which she practiced playing the piano and singing, and a patio in the back for her recreational use. Thus, the facilities afforded Sharron Lynn in her own home seem far more valuable to us than those used by the petitioner in the boardinghouse, and under the statute the amount of the support actually furnished is the amount to be taken into account.

The petitioner makes the further argument that the cost of the singing, dancing, and dramatic lessons are not elements of Sharron Lynn's support, his theory being that such instruction is not a necessity and that only necessities are to be taken into consideration in determining what constitutes support furnished for a dependent. As a basis for his contention, he cites *Haag* v. *Haag*, — Ind. ——, 163 N.E. 2d 243, wherein it was held that a father could not be compelled to pay the cost of his son's college education because it was not a necessity. Despite the Indiana law on the subject of compulsory support payments to children, which incidentally is by no means the uniform view,[2] we have found nothing in either the precise wording of section 152(a) or its legislative history to convince us that the term "support" as used therein should be limited to payments which a court could require parents to make as part of their common law or statutory duty to provide for their children.

---

[2] The generally accepted modern view that a parent may be required to pay for his child's college education is exemplified by *Titus* v. *Titus*, 311 Mich. 434, 18 N.W. 2d 883; *Rawley* v. *Rawley*, 94 Cal. App. 2d 562, 210 P. 2d 891; and *Atchley* v. *Atchley*, 29 Tenn. App. 124, 194 S.W. 2d 252. *Contra: Hachet* v. *Hachet*, 117 Ind. App. 294, 71 N.E. 2d 927; *Commonwealth* v. *Wingert*, 173 Pa. Super. 613, 98 A. 2d 203; *Straver* v. *Straver*, 59 A. 2d 39 (N.J. Eq. 1948).

An argument quite similar to that made by the petitioner was recently rejected by this Court in *Bernard C. Rivers*, 33 T.C. 935, where it was stated:

Petitioner's position is that public schools were available to the children wherein no tuition was required and that therefore the tuition paid by Mary was not for the necessities of life and therefore not to be considered in determining the total cost of their support. We have had occasion in *Martha J. Blyth*, 21 T.C. 275, to consider this point. We there found that tuition paid for the attendance of a child at a private school was expended in the support of the child. On the strength of that case we hold here that the tuition expenses incurred and paid by Mary with respect to the attendance of the children at parochial schools are also to be considered as having been spent for their support.

The extent of Sharron Lynn's singing talent is indicated by the fact that during 1957 she sang in two broadcasts over Radio Station WKJG in Fort Wayne, and at the church she attended was selected as soloist at Easter and Christmas. Consequently, it appears to us that preparatory training for a possible singing career, which may well be as important as a college education to Sharron Lynn, would certainly be encompassed within the scope of support under section 152(a).

Accordingly, since the petitioner did not furnish more than half of Sharron Lynn's support, we sustain the respondent's determination that the petitioner is not entitled to a dependency exemption for Sharron Lynn in 1957.

*Decision will be entered for the respondent.*