VIRGINIA M. CRAMER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5030-69.    Filed March 29, 1971.

Virginia M. Cramer, pro se.
*Chauncey W. Tuttle, Jr.,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioner's income tax for 1964, 1965, and 1966 in the amounts of $257.62, $561.21, and $594.22, respectively. The issues presented for decision are:

(1) Whether petitioner, during 1966, furnished more than one-half of the support of her son, Brian, within the meaning of section 152(a);[1]

(2) Whether the taxes which petitioner paid on certain real property during 1965 and 1966 are deductible under section 164;

(3) Whether the expenses which petitioner incurred during 1966 in repossessing, reconditioning, and reselling her former residence were

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

incurred for the production of income and thus deductible under section 212(1);

(4) Whether petitioner has shown that she sustained a loss, within the meaning of section 165(a), as a result of an automobile accident in 1966; and

(5) Whether the loss resulting from the "theft" of certain property was sustained, within the meaning of section 165(a), in 1965 or an earlier year.

### FINDINGS OF FACT

Petitioner was a legal resident of Dearborn Heights, Mich., at the time she filed her petition. Her returns for 1964, 1965, and 1966 were filed with the district director of internal revenue, Detroit, Mich.

### *Dependency Exemption Issue*

Petitioner was married to Donald Cramer (hereinafter Donald) from 1946 until December 1957, when they were granted a divorce by the Circuit Court of Wayne County, Mich. They had two children, a daughter, Lorell, and a son, Brian. Under the divorce decree, petitioner was awarded custody of the children, and Donald was ordered to make payments toward their support. Pursuant to this decree, Donald furnished $2,080 for Brian's support during 1966.

Both of the children lived with petitioner until July 12, 1966, when Lorell was married and moved away. Brian remained with her the rest of the year. Petitioner paid the following amounts for the support of herself and her children while they were living with her in 1966:

| | | | |
|---|---|---|---|
| Telephone | $237.92 | Church contributions | $143.00 |
| Heat | 303.87 | Clothing | 1,033.98 |
| Electricity | 145.20 | Medical | 405.53 |
| Water | 28.64 | Education for children | 454.10 |
| Transportation—direct | | Food | 1,425.26 |
| cost | 1,268.71 | Housing | 2,880.00 |
| Stationery and postage | 98.46 | | |
| Cleaning and maintenance | 207.91 | Total | 8,942.22 |
| Entertainment | 309.64 | | |

Of these amounts of general family expenses, $3,576.89 is allocable to the support of Brian. In addition, petitioner expended the following amounts on behalf of Brian individually:

| | |
|---|---|
| Cleaning | $67 |
| Christmas gifts | 125 |
| Magazines and records | 50 |
| Purchase of organ | 1,000 |
| | |
| Total | 1,242 |

Respondent determined that petitioner was not entitled to claim Brian as a dependent during 1966 "because it has not been established that you furnished more than half" of his support during that year.

The total amount expended for Brian's support during 1966 was in excess of $4,160, and petitioner furnished more than one-half of such amount.

### Real Property Issues

In August 1963, petitioner sold her residence located at 8247 Auburn Street (hereinafter the Auburn Street property) under a land sale contract to William S. Osborn (hereinafter Osborn). Under the terms of this agreement, Osborn agreed to make monthly payments on the sale price and to pay the property taxes. Record title to the residence remained in petitioner.

During 1964 and 1965, Osborn failed to pay the real property taxes, and petitioner paid them in the respective amounts of $264.68 and $255.98. Osborn also failed to make his monthly payments on the indebtedness to petitioner, and she instituted a foreclosure suit against him in the Circuit Court of Wayne County. She obtained a default judgment against him and recovered possession of the property on February 18, 1966.

Later in the same year, petitioner resold the property. In connection with the recovery and resale of the residence, petitioner expended the following amounts:

| | |
|---|---|
| Legal expense | $185.00 |
| Lock repairs | 26.00 |
| Unpaid water bill | 19.65 |
| Painting and repair materials | 72.64 |
| Labor | 350.00 |

She also paid the real property taxes for 1966 in the amount of $259.06. No gain was realized on the sale, recovery, or resale of the residence.

During 1965 and 1966, petitioner's mother, Ann Marion Gay, owned a residence located at 720 Atkinson Street (hereinafter the Atkinson Street property). She was intermittently hospitalized from 1965 until June 7, 1968, when she died. Petitioner looked after her mother's residence during this period and paid, with her own money, taxes on the property for 1965 and 1966 in the amounts of $300.62 and $381.94, respectively. Her mother executed a quitclaim deed of the property to petitioner in 1967.

After petitioner sold her residence in 1963, she purchased a new one at 27314 Clearview Street (hereinafter the Clearview Street property). During 1964, 1965, and 1966, her new residence was subject to a mortgage which required petitioner to make monthly escrow pay-

ments of real property taxes. The escrow agent paid the property taxes for those years as follows: 1964—$0; 1965—$843.95; and 1966—$847.89.

On her 1965 and 1966 returns, petitioner deducted $1,144.87 and $915.39, respectively, as real property taxes; these amounts included the taxes paid on the Auburn Street, Atkinson Street, and Clearview Street properties. She also deducted $607.64 on her 1966 return as repairs on the property which she had repossessed during that year.

Respondent determined "that property tax deductions are allowable in the amount of $436.94 in 1965 and $470.88 in 1966," and that the deduction for repairs "is not allowable because it is a nondeductible personal expense under Section 262 of the Internal Revenue Code."

### Automobile Accident Loss Issue

On July 12, 1966, Lorell was involved in a three-car accident which caused damage to petitioner's automobile. Petitioner incurred towing expenses and temporary maintenance expenses—required in order to move the automobile from the scene of the accident—in the amounts of $15 and $40.58, respectively. Although petitioner had insurance which covered her loss, she did not file a claim with the insurance company.

On her return for 1966, petitioner claimed a deduction for a casualty loss in the amount of $202.22. Respondent determined that the deduction "is not allowable because you failed to recover the loss from your insurance company, and, in any event, it has not been established that any deductible loss was sustained during the taxable year."

### Theft Loss Issue

For several years prior to her divorce petitioner owned two diamond rings; one, which cost $200, had five diamonds totaling 0.75 karat, and the other, which cost $700, had a solitaire diamond weighing 0.95 karat. She also owned a .38 caliber Colt revolver which she had purchased in 1957 for $130. During 1961, she gave these three items to Fred J. Neidermiller (hereinafter Neidermiller) for safekeeping. He agreed to keep them in a safety-deposit box and to return them at any time at her request. After several fruitless attempts to locate Neidermiller so that she could recover the items, petitioner in either 1963 or 1964 reported the matter to the police. The value of all three items in 1965 was $700.

After failing to receive a report from the police on his whereabouts and having concluded that she would not recover her property, petitioner, in her 1965 return, claimed a deduction in the amount of $600, giving the following explanation: "Stolen by F. J. Niedermiller

[sic] gun and 2 diamond rings 700 less (100)." Respondent determined that the $600 deduction "is not allowable because it has not been established that any deductible loss was sustained during the taxable year."

OPINION

*Dependency Exemption Issue*

To be entitled to the disputed dependency exemption deduction for Brian for 1966, petitioner must show that she provided over half of his support for that year. Secs. 151 and 152.[2] Our Findings reflect that she has made the requisite showing.

Quite clearly, the stipulation and testimony establish that petitioner incurred expenses exceeding the sum furnished for Brian's support by his father. Respondent recognizes this to be true, but contends that expenditures for the following items were not "support" within the meaning of section 152: Premiums on Brian's life insurance; attorney fees and court costs; automobile payments; mortgage payments on a garage; and the cost of an electric organ. We agree that the first four of these items do not constitute support, and we have excluded them in computing the amounts furnished by petitioner. The cost of the life insurance did not contribute to Brian's maintenance in 1966. *Aaron F. Vance*, 36 T.C. 547 (1961). Nor is there any evidence showing that the attorney fees and court costs aided him in any way. Our Findings include transportation as an item of support to the extent allocable to Brian. The costs, as such, of the automobile and garage were not support items, but rather were capital investments.

We have found, however, that the purchase of the organ constitutes a support item. The testimony shows that Brian had an intense interest in music, and he evidently had considerable musical ability. To help develop this special interest and to keep him "off the streets," petitioner bought the organ for him. The entire expenditure was for his sole benefit, and was necessary to enable him to develop his musical talents.

---

[2] SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

(a) ALLOWANCE OF DEDUCTIONS.—In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income.

\* \* \* \* \* \* \*

(e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—

(1) IN GENERAL.—An exemption of $600 for each dependent (as defined in section 152)—

\* \* \* \* \* \* \*

(B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, \* \* \*

SEC. 152. DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, \* \* \* was received from the taxpayer \* \* \*

(1) A son \* \* \* of the taxpayer, \* \* \*

In the circumstances of this case, we think the expenditure was part of his support. See *Raymond M. McKay*, 34 T.C. 1080 (1960).

## Real Property Taxes

On brief, respondent has conceded the deductibility of the taxes which petitioner paid with respect to the Clearview Street property. Remaining in dispute are the taxes on the Atkinson and Auburn Street properties.

As to the Atkinson Street property, petitioner is not entitled to the disputed deductions. Section 164 allows a deduction for real property taxes; but they are, in general, "deductible only by the person upon whom they are imposed." Sec. 1.164–1(a), Income Tax Regs.; *Magruder* v. *Supplee*, 316 U.S. 394 (1942). During 1965 and 1966, the years in dispute, this property was owned by petitioner's mother, and was not deeded to petitioner until 1967. Prior to the delivery of this deed, she had no interest, legal or equitable, in the property, and the taxes for 1965 and 1966 were not imposed upon her. Her payments of the taxes for those years were, in substance, gifts or some other kind of advances of funds to, or for the benefit of, her mother and, consequently, are not deductible by petitioner.

The dispute as to the Auburn Street property taxes involves two periods: One during 1964 and 1965, prior to the time petitioner recovered possession of the property; the other during 1966, when she resold it. After petitioner first sold the property in 1961, record title remained in her name, and, we infer, the land sale contract with Osborn was not recorded. Under the Michigan statutes, real property taxes are assessed "to the owner if known, and also to the occupant." Mich. Stat. Ann. sec. 7.3 (1960).[3] As the record owner of the property, petitioner was assessed for the property taxes, and they became a debt to the taxing entity for the collection of which her chattels, as well as the realty, could be seized and sold. *Schaefer* v. *Woodmere Cemetery Ass'n.*, 256 Mich. 332, 239 N.W. 300, 301 (1931); see also *Gulf Refining Co.* v. *Perry*, 303 Mich. 487, 6 N.W. 2d 756 (1942); *Gilken Corp.* v. *Commissioner*, 176 F. 2d 141, 144 (C.A. 6, 1949), affirming 10 T.C. 445 (1948). The parties have stipulated that petitioner actually paid the taxes even though Osborn was obligated by the land sale contract to pay them.[4] Consequently, petitioner, having been assessed for the taxes on the Auburn Street property and having paid them in order to

---

[3] Sec. 7.3 Same; parties assessable; persons treated as owner; property of deceased persons. SEC. 3. Real property shall be assessed in the township or place where situated, to the owner if known, and also to the occupant, if any; if the owner be not known, and there be an occupant, then to such occupant, and either or both shall be liable for the taxes on said property, and if there be no owner, or occupant known, then as unknown. * * *

[4] Of course, if petitioner were ever to recover on the judgment which she obtained against Osborn, that recovery would constitute income subject to the limitations of sec. 111.

discharge her debt and to protect her property interests, is entitled to deduct them on her income tax returns for 1964 and 1965. See, e.g., *Theodore Milgroom*, 31 T.C. 1256 (1959) ; *William R. Tracy*, 25 B.T.A. 1055 (1932), reversed on other grounds 70 F. 2d 93 (C.A. 6, 1934), acq. XI-2 C.B. 10; *Cornelia C. F. Horsford*, 2 T.C. 826, 827 (1943), acq. 1943 C.B. 11. The case of *Pacific Southwest Realty Co.*, 45 B.T.A. 426, 437–438 (1941), affd. 128 F. 2d 815 (C.A. 9, 1942), involving California law, under which the real property taxes were assessed to the equitable owner of the property is inapposite.

As to 1966, section 164(d)(1) provides:

(1) GENERAL RULE.—For purposes of subsection (a), if real property is sold during any real property tax year, then—

    (A) so much of the real property tax as is properly allocable to that part of such year which ends on the day before the date of the sale shall be treated as a tax imposed on the seller, and

    (B) so much of such tax as is properly allocable to that part of such year which begins on the date of the sale shall be treated as a tax imposed on the purchaser.

While the property taxes were assessed to petitioner for 1966, the statute quoted above provides that they will be treated as having been partially assessed to the buyer instead of her. This provision reflects the common practice of prorating property taxes as between the buyer and the seller, but it is not dependent on an actual proration. The section applies automatically to every sale and allows the buyer to deduct a portion of the property taxes, whether he actually pays them or not. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. p. A45 (1954) ; S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591) 83d Cong., 2d Sess. pp. 196–197 (1954). Consequently, petitioner is treated as having been assessed for, and as having paid, only the portion of the taxes for 1966 allocable to the period prior to the time she sold the property. Sec. 1.164–6(a), Income Tax Regs.

The record does not disclose when in 1966 she made the sale; however, from the fact that her income tax return for that year reflects that she received a substantial amount of interest income in respect of the sale of this property, we infer that the sale was made shortly after she recovered possession of it on February 18. For the portion of the year prior to the sale—not less than the 48 days prior to February 18— she is entitled to a deduction. Accordingly, we hold that she may deduct 48/365 of the $259.06 in taxes on the Auburn Street property for 1966, or $34.07. Rev. Rul. 67–31, 1967–1 C.B. 49.

*Expenses of Repossession and Resale—Auburn Street Property*

Petitioner's expenses in connection with the repossession and resale of the Auburn Street property are not deductible. The legal fees

constitute amounts "paid * * * in connection with the reacquisition" of property within the meaning of section 1038 [5] and, therefore, are not deductible but are added to petitioner's basis in the reacquired property. Sec. 1.1038–1(c)(4)(i), Income Tax Regs. The payments made by petitioner for the delinquent water bills are also capital expenditures. *Hadley Falls Trust Co.* v. *United States*, 110 F. 2d 887 (C.A. 1, 1940). The amounts paid to recondition the property for resale—painting and repairs—were not incurred for the "maintenance of property held for the production of income" within the meaning of section 212, and therefore are not deductible; rather they are treated as expenses incurred "in order to assist" in the sale of the property within the meaning of section 1034(b)(1).[6] Thus, none of these expenditures are deductible in 1966; the first two are added to the adjusted basis, and the third is treated as an expense of the sale.

### *Casualty Loss—Automobile Accident*

Section 165(a) allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." [7] Section 165(c)(3) provides, however, that in the case of an individual, a loss of property not connected with a trade or business "shall be

---

[5] SEC. 1038. CERTAIN REACQUISITIONS OF REAL PROPERTY.

(a) GENERAL RULE.—If

(1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and

(2) the seller of such property reacquires such property in partial or full satisfaction of such indebtedness,

then, except as provided in subsections (b) and (d), no gain or loss shall result to the seller from such reacquisition, and no debt shall become worthless or partially worthless as a result of such reacquisition.

(b) AMOUNT OF GAIN RESULTING.—

* * * * * * *

(2) LIMITATION.— * * *

* * * * * * *

(B) the amount of money and the fair market value of other property * * * paid or transferred by the seller in connection with the reacquisition of such property.

* * * * * * *

(c) BASIS OF REACQUIRED REAL PROPERTY.—If subsection (a) applies to the reacquisition of any real property, the basis of such property upon such reacquisition shall be * * * increased by * * *

* * * * * * *

(2) the amount described in subsection (b)(2)(B).

[6] SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(b) ADJUSTED SALES PRICE DEFINED.—

(1) IN GENERAL.—For purposes of this section, the term "adjusted sales price" means the amount realized, reduced by the aggregate of the expenses for work performed on the old residence in order to assist in its sale.

[7] Relying upon *Kentucky Utilities Co.* v. *Glenn*, 394 F.2d 631 (C.A. 6, 1968), respondent contends that the deduction is not allowable because petitioner chose not to file a claim under an insurance policy which covered the accident. We do not reach that argument because we conclude that petitioner has not otherwise shown that she is entitled to the deduction.

allowed only to the extent that the amount of loss to such individual arising from each casualty * * * exceeds $100." The measure of the loss is the difference between the fair market value of the property before and after the accident. Sec. 1.165–7(b)(1), Income Tax Regs. The costs of repairing an automobile may be used to estimate the amount of the loss, *W. F. Harmon*, 13 T.C. 373, 382–383 (1949), acq. 1950–1 C.B. 3; *S. P. Keith, Jr.*, 52 T.C. 41, 48 (1969), acq. 1970–2 C.B XX; however, the burden rests with petitioner to establish the requisite facts for allowing the deduction.

The parties have stipulated the costs of towing the automobile and making temporary repairs needed to move it from the scene of the accident, but no other evidence was presented on the alleged loss. The stipulated amounts were not expended to restore the automobile to its original condition, and, consequently, they provide no measure of the automobile's loss in value. Furthermore, the sum of these two items, $55.58, does not exceed the statutory $100 nondeductible amount. Accordingly, petitioner's proof is not sufficient to show that she suffered a deductible loss from the accident.

### Theft Loss

As noted above, section 165(a) provides for the allowance of certain losses as deductions, and among these is a "theft" loss. Section 165(e) provides that a "loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." The word "theft" as used in these provisions is not "a technical word of art with a narrowly defined meaning but is, on the contrary, a word of general and broad connotation, intended to cover and covering any criminal appropriation of another's property to the use of the taker." *Edwards* v. *Bromberg* 232, F. 2d 107, 110 (C.A. 5, 1956); *Robert S. Gerstell*, 46 T.C. 161, 171–172 (1966).

The testimony shows that in 1961 petitioner entrusted two rings and a gun to a business associate, Neidermiller, for safekeeping. He agreed to keep the articles in a safety-deposit box and to return them at her request. Thereafter she made repeated attempts by telephone to recover the items from him, but was unable to locate him. In 1963 or 1964, when she became concerned that possession and use of the gun by someone else might cause her embarrassment, she reported the matter to the police. In her income tax return for 1965, she claimed the disputed deduction.

Respondent does not contend that a loss was not sustained or that such loss does not fall within section 165(a). He asks us to hold that the deduction is not allowable in 1965 on the technical ground that, within the meaning of section 165(e), the loss was "discovered" in

1961, 1962, or 1963, arguing that "petitioner could not connect the taxable year 1965 with an event relating to discovery of the theft or to prospects of recovery."

A loss is considered to be discovered when a reasonable man in similar circumstances would have realized the fact that he had suffered a theft loss. Cf. *Jane U. Elliott*, 40 T.C. 304 (1963), acq. 1964–1 C.B. (Part 1) 4. From a consideration of the record as a whole, we find that petitioner discovered the loss in 1965 and that it is deductible in that year. *Alison* v. *United States*, 344 U.S. 167 (1952); *Scofield's Estate* v. *Commissioner*, 266 F. 2d 154, 159 (C.A. 6, 1959), affirming on this issue 25 T.C. 774 (1956).

No facts support respondent's contention that the loss was incurred in 1961, 1962, or 1963. Not until 1963 or 1964, when she reported the matter to the police, did petitioner think Neidermiller might have absconded with her property. She then thought she should await the results of the police investigation before claiming the deduction; even for a period after reporting the matter, she testified that she thought she might recover the property from Neidermiller. We think her claim to a deduction for 1965 is a reasonable one.[8]

*Decision will be entered under Rule 50.*

---

[8] It should be noted that 1964 is before the Court and, if the loss occurred in that year, it would be allowable in this proceeding upon a proper amendment of the petition.