FRANCIS A. MURACCA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CAMILLE V. MURACCA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Muracca v. Commissioner
Docket Nos. 9659-81, 13238-81.
United States Tax Court
T.C. Memo 1984-234; 1984 Tax Ct. Memo LEXIS 445; 47 T.C.M. (CCH) 1762; T.C.M. (RIA) 84234; April 30, 1984. *445 Held: (1) Alimony pendente lite payments received by petitioner Camille V. Murracca from her husband pursuant to a court order are includable in her gross income; (2) petitioner Francis A. Muracca is entitled to a dedection for alimony pendente lite payments made to his wife pursuant to a court order; (3) petitioner Francis A. Muracca is entitled to claimed dependency exemption; (4) petitioner Camille V. Muracca is not entitled to claimed dependency exemption; (5) petitioner Camille V. Muracca is not entitled to file her 1977 tax return as unmarried head of household. Francis A. Muracca, pro se, in docket No. 9659-81. Thomas A. Crawford, Jr., for the petitioner in docket No. 13238-81. Donna J. Pankowski, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' 1977 Federal income taxes as follows: (1) For petitioner Francis A. Muracca a deficiency of $4,306.64; and (2) for petitioner Camille V. Muracca a deficiency of $1,581. [1] After concessions by Mr. Muracca, the remaining issues for decision are: (1) Whether payments made by Mr. Muracca to Mrs. Muracca during 1977 are alimony payments; (2) whether *446 either petitioner is entitled to a dependency exemption for their son; and (3) whether Mrs. Muracca is entitled to compute her income tax return for 1977 as an unmarried head of household. For convenience, our Findings of Fact and Opinion will be combined for each issue. Those facts which were stipulated are found accordingly and such stipulations are incorporated herein by this reference. Both petitioners were legal residents of Pittsburgh, Pennsylvania, when their respective petitions were filed. Alimony Issue
During 1977, Mr. Muracca made installment payments to Mrs. Muracca totaling $4,175. He claimed an alimony deduction under section 215(a) [2] for these payments in his 1977 tax return. Mrs. Muracca did not include these payments in her gross income for 1977, contending that such payments do not constitute alimony required to be included by her under section 71(a)(3). Viewing himself as the stakeholder, respondent addressed petitioners' inconsistent treatment of the payments by disallowing Mr. Muracca's deduction while requring Mrs. Muracca to include them in her gross *447 income. [3] Petitioners stipulated that during 1977 they were husband and wife living separate and apart. They had separate during 1969 and, on June 19, 1969, the Court of Common Pleas of Allegheny County, Pennsylvania, entered an order (the 1969 Order) requring Mr. Muracca to pay Mrs. Muracca $125 per week for "alimony pendente lite, and support of children." No portion of the payment was specified as "support of children." The petitioners stipulated that the 1969 Order was in effect in 1977. Each filed a separate tax return for 1977. Section 71(a)(3) provides in pertinent part that-- If a wife is separated from her husband, the wife's gross *448 income includes periodic payments * * * received by her * * * from her husband under a decree * * * requiring the husband to make the payments for her support or maintenance. * * * This section does not apply if the husband and wife make a single joint return. An order of alimony pendente lite satisfies the prerequisite of section 71(a)(3) that the payments be made under a "decree." Korman v. Commissioner,36 T.C. 654 (1961), affd. 298 F.2d 444 (2d Cir. 1962). Payments made pursuant to such an order are, therefore, includable in the recipient's gross income. There is no dispute that if the payments by Mr. Muracca were made pursuant to the 1969 Order they are properly characterized as alimony. Mrs. Muracca, however, asserts that that Order was null and void as May 18, 1972, and that the payments she received during 1977 were, therefore, gratuitous. Her basis for this assertion is her erroneous interpretation of a 1979 Order by the Court of Common Pleas of Allegheny County which suspended the 1969 Order. Contrary to Mrs. Muracca's interpretation, this suspension was not retroactive to 1972. This Court has previously determined that payments made pursuant to the 1969 Order after *449 1972 were includable in Mrs. Muracca's gross income under section 71(a)(3). [4] No intervening event which would warrant a different determination for the 1977 tax year was raised in this proceeding. The fact that the 1969 Order was suspended as of 1979 in no way diminishes or nullifies its effect during 1977. The 1969 Order, by its own terms, was valid pending further order of the court. No further order was entered until 1979. We conclude that the payments made by Mr. Muracca during 1977 were pursuant to his legal obligations under the 1969 Order. [5] The payments, therefore, cannot be characterized as gratuitous. Respondent correctly determined that the payments of $4,175 received by Mrs. Muracca from Mr. Muracca during 1977 were alimony and were includable in her gross income under section 71(a)(3). Respondent erred, however, in disallowing Mr. Muracca a deduction under section 215(a) for these payments. The Dependency Issue
Petitioners have two children: Michele *450 Muracca Clemens, born August 11, 1956, and Francis A. Muracca II, born July 30, 1959. Upon separation, both children resided with Mrs. Muracca at the family home which was jointly owned by petitioners. During 1977, Michele resided with Mrs. Muracca for four months while Francis II resided with her for the entire year. Both petitioners claimed a dependency exemption for their son on their respective 1977 tax returns. Respondent disallowed both exemptions on the basis that neither petitioner had established that they had furnished more than one-half of Francis II's support during 1977. Section 151(e) permits a taxpayer to claim an exemption for each dependent who is a child of the taxpayer and is under 19 years of age or a student.Section 152(a) defines a "dependent" as a son or daughter of the taxpayer over half of whose support was received from the taxpayer. Although section 152(e) provides a special test for determining when a child of divorced or legally separated parents is a dependent, that subsection cannot be relied on by petitioners. The applicability of section 152(e) is premised on the existence of a decree of divorce or separation or a written separation agreement. *451 This Court has already determined that the 1969 Order from the Court of Common Pleas was not a decree of separation [6] and no written separation agreement existed in 1977. The issue of which, if either, petitioner is entitled to a dependency exemption for their son in 1977 must be determined under section 152(a). In applying section 152(a), each petitioner has the burden of proving his own expenditures and that those amounts exceeded one-half of the total support provided. Seraydar v. Commissioner,50 T.C. 756, 760 (1968). For clarity, the items of support provided by each petitioner will be discussed separately. Before turning to these items, however, it will be helpful to state the general principles which will be applied in evaluating the claimed support expenditures. The Court has consistently held that items of support are not limited to necessities. See, e.g., McKay v. Commissioner,34 T.C. 1080 (1960). Spending money, entertainment and recreation, birthday, Christmas and graduation gifts, restaurant meals, musical instruments and lessons and sports equipment have all been held by this Court to be proper items of support. [7] Certain *452 cases [8] cited by Mrs. Muracca which would limit support to "necessities" do not reflect the current opinion of this Court and are not regarded as persuasive authority for narrowly defining what constitutes support. Shapiro v. Commissioner,54 T.C. 347, 349-350 (1970). Therefore, in determining the support provided by each petitioner, an item of support will not be disregarded because it is not a "necessity." The reasonableness of amounts actually expended for proper items of support is not an issue in this proceeding. Shapiro v. Commissioner,supra at 350. If an item is properly characterized as support, it will not be disallowed merely because, it, or substitute, could have been furnished less expensively. However, in instances where claimed items of support are too high or *453 unrealistic and are not substantiated by independent, reliable evidence, principles analogous to those stated in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), will be applied to estimate the amount of such items of support. The "cohan rule" has been applied by this Court in other cases where it was necessary to estimate the amounts of specific items of support. [9]
A. Support Furnished by Mrs. Muracca
The home in which Mrs. Muracca and Francis II resided in 1977 was jointly owned by petitioners. No outstanding court order or agreement gave Mrs. Muracca the exclusive right to possession or occupancy of the residence. Under these circumstances, it is presumed that each petitioner had an equal right to the use and occupancy of the jointly held property. Therefore, each is considered to have provided one-half of the fair rental value of Francis II's lodging during 1977. Lindberg v. Commissioner,46 T.C. 243, 247 (1966). The fair rental value of the home in 1977 was $8,400. Absent unusual circumstances, a pro rata allocation of this amount among the residents during various periods during 1977 is *454 appropriate. McGuire v. Commissioner,77 T.C. 765, 776-777 (1981). As noted above, Michele resided in the home for four months during 1977. During those four months, one-third of the fair rental value of the home is allocable to Francis II, whereas one-half of the fair rental value of the home for the remaining eight months is allocable to Francis II. This method of allocation was employed by both respondent and Mrs. Muracca in their respective trial briefs. [10] Each petitioner, therefore, furnished $1,866.66 in the form of lodging to Francis II's support during 1977. Mrs. Muracca separately paid for utilities, home insurance, and repair and maintenance of the family residence. In providing a home for Francis II, she also paid for cable TV, newspapers, telephone service and maid and laundry services. A portion of the cost of each of these items constitutes support provided by Mrs. Muracca to Francis II. The amounts expended for each of these items were established by documentary evidence or uncontradicted and reliable testimony. Using the same allocation method as was used for lodging, Mrs. Muracca *455 furnished $2,614.83 support to Francis II for these items during 1977. Food is unquestionably a proper item of support. Mrs. Muracca estimated that she expended, on average, $75 to $100 per week for food for the household during 1977. Only $1,118.72 of these food expenditures was documented. While it is reasonable to conclude that additional purchases of food for the household were made in cash, Mrs. Muracca's estimate of $3,900 to $5,200 for food during 1977 is excessive. Due to the lack of comprehensive record evidence as to the amount expended for this item of support, we conclude that a reasonable estimate of Mrs. Muracca's total food expenditures in 1977 is $3,300. [11] Given the numerous meals Francis II habitually ate outside the home and Michele's four-month residence, we find that one-third of this amount, or $1,100, represents Francis II's allocable share of food expenditures. Mrs. Muracca testified that she *456 expended an estimated $5 per week for Francis II's dry cleaning during 1977.Since this testimony was uncontroverted, reasonable in amount, and for an accepted item of support, it is included in full in determining the support furnished by Mrs. Muracca.
Francis II estimated that Mrs. Muracca expended $500 for gifts, clothing and miscellaneous items for his benefit during 1977. Mrs. Muracca estimated that her contributions for these items of support were approximately $650. She did not, however, provide any reliable documentation of these expenditures. Instead, she sought to rely for substantiation of these expenses, in part, on an allocation of her Master Charge and department store account payments. Only $42.25 of the department store charges were clearly attributable to purchases of clothing for Francis II. As to the balance of the credit card and department store payments, no evidence was proffered to indicate what was purchased or that any portion of these purchases were for Francis II's benefit. Mrs. Muracca also testified that Francis II charged toiletries and miscellaneous items at Merit Drug for which she paid. Francis II testified that he rarely charged purchases at Merit *457 Drug and, unlike other charge account payments, no documentary evidence of either the charges or payments to Merit Drug was offered. While the testimony of Francis II and Mrs. Muracca conflicts as to the precise amount of these expenditures, taken as a whole it supports our conclusion that $500 is a reasonable estimate of Mrs. Muracca's expenditures for clothing, gifts and miscellaneous items of support for Francis II during 1977. As a final item of support, Mrs. Muracca testified that she gave Francis II, on average, $10 a week as allowance. Michele testified that during the four months she resided in the home she observed her mother give Francis II money. It is reasonable to conclude that, with the exception of the 10 weeks Francis II was employed during 1977, Mrs. Muracca continued to give Francis II money during the time Michele was not at home. We do not accept Francis II's contradictory testimony as to this item of support. Having found Mrs. Muracca's testimony reliable, we find that she provided Francis II an estimated $420 in allowance during 1977. In summary, Mrs. Muracca provided the following support to Francis II in 1977: Lodging
$1,866.66
Utilities
816.48
Home Insurance
234.67
Home Maintenance and Repair
524.43
Maid and Laundry Service
693.33
Cable TV, Newspaper and Telephone
345.92
Food
1,100.00
Clothing, Gifts and Miscellaneous
Items
500.00
Dry Cleaning
260.00
Allowance
420.00
$6,761.49
B. *458 Support Furnished by Mr. Muracca
As discussed, supra, Mr. Muracca provided support for his son in the amount of $1,866.66 for lodging during 1977. Francis II testified that his father gave him a weekly allowance, customarily took him to dinner on Saturday night, paid for his haircuts and filled his car with gasoline. All of these are proper support items. Mrs. Muracca objects to inclusion of these items in the support provided by Mr. Muracca because they are undocumented and speculative. Like the dry cleaning and allowance she provided, however, these are not items for which documentary substantiation generally exists. The weekly or monthly expenditure for each of these items was minimal ($15 or less) with the exception of the $25 weekly allowance which one would expect to be in cash and, therefore, undocumented. Francis II's uncontradicted and detailed testimony concerning the regularity and amounts of these expenditures provides an adequate basis on which to estimate each of these support items. Accordingly, they are included in the support furnished by Mr. Muracca during 1977. In addition to their Saturday dinners, Francis II attended approximately 30 professional hockey *459 games with his father during 1977. His tickets, per game, cost approximately $9.75. Entertainment expenditures, while not necessities, are proper items of support. Mrs. Muracca objects to this item of support on the basis that 20 of the games were attended on season passes purchased in 1976. However, the year in which the tickets were used, rather than the year in which they were paid for, is controlling in determining in which year the support was furnished. Seraydar v. Commissioner,50 T.C. 756, 761 (1968). The value of the tickets for hockey games attended during 1977 is included in the support furnished by Mr. Muracca. In 1977, Francis II graduated from high school and incurred a number of graduation expenses which his father paid. Francis II testified, in detail, as to each of these expenses and, since they are proper items of support, they are included in full in the support furnished by Mr. Muracca. Francis II took his college boards and applied to a number of schools during 1977. Mr. Muracca paid for these items by check. Initially, Francis II intended to attend New York University at Cortland. He testified that he paid admission fees, tuition, boarding costs and *460 other miscellaneous fees at that school with funds provided by Mr. Muracca. He withdrew from Cortland. within a matter of days and all but $118.50, plus the $100 admission fee, were refunded. Francis II subsequently attended the University of Pittsburg during 1977. His documented tuition and other expenses at the University of Pittsburg were $761.82. [12] He also testified that he paid $50 to park at the University for two months. According to both Mr. Muracca and Francis II, Mr. Muracca paid all of his son's college expenses by making deposits directly to his son's checking account or by giving his son cash which was subsequently deposited by Francis II in his checking account. Although Mr. Muracca did not identify the source of the cash he gave his son, he testified that he customarily kept cash on hand or accumulated cash to meet his children's expenses. The uncontradicted testimony and documentary evidence provides an adequate basis for including Francis II's college expenses in the support provided by Mr. Muracca. Francis *461 II was a talented hockey player in high school and continued to play with the Junior Penguins after high school graduation. Mr. Muracca paid for ice time, medical insurance, a physical examination, orthopedic care, the entry fee for the Junior Penguins, a hockey jacket, equipment and four playing trips with the Junior Penguins.All of these expenditures were solely for Francis II's benefit and enabled him to continue developing his skills as a hockey player. This Court has included expenditures to develop a dependent's special talents and interests in analogous circumstances. Cramer v. Commissioner,55 T.C. 1125, 1129-1130 (1971) (purchase of an organ for a son with musical ability); McKay v. Commissioner,34 T.C. 1080, 1084-1085 (1960) (singing, dancing and dramatic lessons for a talented daughter). Reasonable hockey expenses which were established by documentary or reliable testimony are included in the support furnished by Mr. Muracca. Expenses for hockey trips on which only vague estimates of expenses were provided or on which Mr. Muracca accompanied Francis II are not included in the support furnished. No reliable evidence of the amounts expended on these trips or allocable *462 to Francis II was offered. As a graduation gift to Francis II, Mr. Muracca provided $1,200 toward the purchase price of a 1977 Camaro.The car was titled and registered in Mr. Muracca's name in order to obtain insurance economically. The car was exclusively in Francis II's possession, however, and was used by him for his sole benefit and enjoyment. Since gifts are proper items of support, the money contributed toward the purchase of the car is includable in support furnished by Mr. Muracca in 1977. The costs of advertisements to sell Francis II's old car, which Mr. Muracca paid for by check, are also proper items of support. Mr. Muracca also seeks to include in the support he provided Francis II a portion of his costs for automobile insurance. Two cars and three drivers were covered by the policy and while the total cost of the automobile insurance was documented, no reliable evidence was introduced as to what portion of these costs is allocable to Francis II's car or his coverage as a driver under the policy. We note that, unlike home insurance which can reasonably be allocated in equal proportion to the residents, the cost of automobile insurance is not equally attributable *463 to all vehicles or drivers. Since no reliable evidence of the costs, or reasonable basis on which to estimate the costs, of Francis II's automobile insurance is in evidence, no allowance is made for this item of support by Mr. Muracca. Mr. Muracca has also included in the support he furnished Francis II a portion of his country club dues and the full amount of country club chits signed by Francis II. Mr. Muracca deducted one-half of his country club expenses as a business expense on his 1977 tax return. The basic membership dues at the club in 1977 were $698.04. All four members of the Muracca family had use of the club. The basic membership dues did not increase with the number of family members. Since Mr. Muracca paid no additional basic dues for his son's use of the club, no part of the basic membership dues is allocable to Francis II's support. Three members of the family, including Francis II, used the pool for which use an additional $100 fee was incurred. Mrs. Muracca and her son also played tennis at the club, which play resulted in an additional $100 charge. A portion of both the tennis and pool fees, which represent personal as contrasted with business use of the *464 club facilities, are allocable to Francis II as support provided by Mr. Muracca. In addition to membership charges, Francis II signed club chits for clothing, meals and miscellaneous fees. Generally, such items would be included in full as support. However, many of the chits were for meals for more than one person or for take-out food orders. Mrs. Muracca testified that she sometimes ate with Francis II at the club or placed take-out orders which he picked up. Meals for Mrs. Muracca or other unidentified persons are not properly characterized as support provided for Francis II. Therefore, only one-half of the total club chits for meals for more than one person or take-out food orders is included as support provided by Mr. Muracca. Mr. Muracca also seeks to include in the support he provided birthday and Christmas gifts, medical insurance costs, the purchase of an iron, towels and other unidentified items for college, costs of visits to colleges and "meat" orders. Insufficient evidence was introduced as to these items to permit their inclusion in the support provided. In summary, Mr. Muracca provided the following support for Francis II during 1977: Lodging
$1,866.66
Allowance
1,050.00
Saturday Dinners
450.00
Haircuts
108.00
Gasoline
630.00
Professional Hockey
Game Tickets
292.50
High School Graduation
Expenses
385.00
College Expenses
1,074.32
Hockey Playing Expenses
830.00
Graduation Gift -
1977 Camaro
1,200.00
Ads to Sell 1975 Camaro
48.00
Country Club Expenses
505.17
Total
$8,439.65
C. *465 Other Support
Francis II worked during the summer of 1977 and earned $2,280. Of his take-home pay of $1,770.02, he saved $957. The balance, $813.02, represents funds Francis II contributed to his own support. Mr. Muracca established a custodial account for his son under the Pennsylvania Uniform Gifts to Minors Act, 20 Pa. Cons. Stat. sec. 5301 et seq. (1975), in years prior to 1977. Contributions to this account transferred title to Francis II and constituted irrevocable gifts in the years made. 20 Pa. Cons. Stat. sec. 5304(a). During late July 1977, separate sales of stock in this custodial account were made for the following amounts: $2,476.56, $3,289.65 and $479.29. In August, a fourth sale of stock netted an additional $252.85. Mrs. Muracca contends that the proceeds realized from sales of stock in the custodial account during 1977 represented, at least in part, additional amounts which Francis II contributed to his own support. Specifically, she asserts that sales proceeds from the custodial account were used to pay college expenses of $760, $1,200 towards the purchase of the 1977 Camaro and $750 for automobile insurance. As discussed above, these are items which Mr. *466 Muracca seeks to include in the support he furnished Francis II. [13] If in fact they were paid for by money from Francis II's custodial account, these items cannot be considered support furnished by Mr. Muracca. Mr. Muracca contends that no part of the stock sales proceeds from the custodial account were used for Francis II's support.On August 1, 1977, a certificate of deposit for $15,000 was purchased in Mr. Muracca's and his son's names. Although only the check for $2,476.56 from Francis II's custodial account was directly used to purchase this certificate of deposit, Mr. Muracca maintains that approximately $6,500 of Francis II's funds were used as part of the purchase price. Immediately prior to purchasing the certificate of deposit, Mr. Muracca sold stock he owned in his own name and realized $9,008.18. This amount plus the proceeds from the sales of stock in Francis II's custodial account closely approximate the purchase price of the certificate of deposit. It seems reasonable to conclude that the certificate of deposit replaced these prior stock investments. While *467 the specific checks representing the sales proceeds of the custodial account stock were not used to purchase the certificate of deposit, there was no substantive diversion of these funds for Francis II's support. Additionally, two of the checks totaling $4,021.79 were not deposited in other accounts to Mr. Muracca until after the certificate of deposit was purchased and can be viewed as reimbursement of funds of Mr. Muracca's which he had used for the certificate of deposit purchase. As to the specific items on which Mrs. Muracca has based her challenge, the 1977 Camaro was purchased prior to any sales of stock in the custodial account and funds from the account could not, therefore, have been used for this purchase. Mr. Muracca made a separate sale of stock which he owned on August 29, 1977, netting $760.61. On September 10, 1977, he deposited $760.61 in his son's checking account to cover the college expenses Mrs. Muracca asserts were paid with custodial account funds. The identical amounts of the stock sale income and deposit clearly indicate that Mr. Muracca paid this item of support from his own funds. In conclusion, we find that the following represents Francis II's support *468 during 1977: Support furnished by Mrs. Muracca
$ 6,761.49
Support furnished by Mr. Muracca
8,439.32
Support furnished by Francis II
813.02
Total
$16,013.83
Since Mr. Muracca provided over one-half of Francis II's total support during 1977 he is entitled to claim a dependency exemption for his son under section 151(e). Respondent correctly disallowed Mrs. Muracca's claimed dependency exemption for Francis II since she did not provide over one-half of his support and was not entitled to such an exemption. D. "Head of Household" Issue
Mrs. Muracca computed her 1977 income tax as an unmarried head of household. Respondent, having disallowed her dependency exemption for Francis II, advised Mrs. Muracca that she was not entitled to head of household rates and recomputed her tax based on the higher married filing separately rate. Mrs. Muracca would be considered unmarried for application of section 2(b) and would qualify to file as an unmarried head of household only if she were entitled to a dependency deduction for Francis II for 1977. Since we have determined she is not entitled to such a deduction, she cannot be treated as an unmarried individual under the provisions of section 143(b) or, *469 consequently, section 2(c). Respondent correctly disallowed her claim to head of household rates. Decision will be entered under Rule 155 in docket No. 9659-81.
Decision will be entered for the respondent in docket No. 13238-81.
Footnotes
1. These cases were consolidated for trial, briefing and opinion by Order of the Court dated Feb. 24, 1983.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Respondent's inconsistent treatment under these circumstances to protect the revenue in a typical "whipsaw" situation is not unusual. See, e.g., Pierce v. Commissioner,T.C. Memo. 1981-254 (dealing with dependency exemption); Morris v. Commissioner,T.C. Memo. 1966-245↩ (dealing with alimony issue and dependency exemption).
4. Muracca v. Commissioner,↩ T.C. Summary Opinion 1978-377 (dealing with the 1973 and 1974 tax years).
5. Mrs. Muracca's joinder in the stipulation that the 1969 Order was in effect in 1977 is in accord with our conclusion.↩
6. Muracca v. Commissioner,T.C. Memo. 1980-91↩.
7. Cramer v. Commissioner,55 T.C. 1125 (1971); Shapiro v. Commissioner,54 T.C. 347 (1970); Rivers v. Commissioner,33 T.C. 935 (1960); McKay v. Commissioner,34 T.C. 1080 (1960); Ritchie v. Commissioner,T.C. Memo. 1979-493; Mort v. Commissioner,T.C. Memo. 1975-109↩. 8. Flowers v. Commissioner, an unreported opinion ( W.D. Pa. 1957, 52 AFTR 1383, 57-1 USTC par. 9655); Dyer v. Commissioner,T.C. Memo. 1955-168↩.
9. Bruner v. Commissioner,39 T.C. 534, 538 (1962); Ritchie v. Commissioner,supra.↩
10. Mrs. Muracca, however, used a three rather than four-month residency for Michele.↩
11. This figure is comparable to the amount computed with reference to the Bureau of Labor Statistics Analysis of Food Expenses in Mrs. Muracca's trial brief. While not in evidence, this analysis substantiates the reasonableness of our estimated food expenditures.↩
12. Francis II testified that his tuition, other expenses, and books at the University of Pittsburgh cost $826. Only $761.82 is supported by the documentary evidence.↩
13. As discussed above, no amount for automobile insurance was included in the support provided by Mr. Muracca.↩