HOWARD E. FARBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farber v. Commissioner
Docket No. 18941-85.
United States Tax Court
T.C. Memo 1987-267; 1987 Tax Ct. Memo LEXIS 267; 53 T.C.M. (CCH) 932; T.C.M. (RIA) 87267; June 1, 1987. Howard E. Farber, pro se. Daniel M. Carr, for the respondent. *268 GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year 1980 in the amount of $94,094.80. The Commissioner also determined that petitioner was liable for additions to tax under sections 6651(a)(1) [1] and 6653(a)(1) in the amounts of $9,697.95 and $4,704.74, respectively. After concessions, the issues for decision are whether petitioner is entitled to a theft loss deduction for advances he made to a company operated by his uncle which were not repaid or, in the alternative, whether he is entitled to a bad debt deduction for the advances. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioner, Howard E. Farber, resided in Southfield, Michigan, at the time he filed his petition in this case. Petitioner failed to *269 timely file his Federal income tax return for the taxable year 1980. During 1980, petitioner was the regional director for First National Monetary Corporation. First National Monetary Corporation was in the business of buying gold and silver. Fred Farber, petitioner's uncle, was employed by First National Monetary Corporation as a broker. In 1980, Fred was attempting to start his own business which would compete with First National Monetary Corporation. As a result, in September 1980, First National Monetary Corporation terminated his employment. Fred subsequently started his own business under the name Global Precious Metals. About three weeks after Fred was fired, petitioner was also fired. Petitioner then began working for Global Precious Metals as a broker. Petitioner advanced Global Precious Metals $10,000 on September 24, 1980, $2,000 on December 9, 1980, and $2,000 on December 12, 1980. Petitioner also advanced $8,000 to Global Energy Services. Fred told petitioner that Global Energy Services was a subsidiary business of Global Precious Metals. Petitioner continued to work for Global Precious Metals until the beginning of 1981. No notes were executed to evidence *270 the indebtedness and no arrangements were made for the repayment of the advances to Global Precious Metals. Neither were arrangements made for the payment of interest. Petitioner was unaware of the financial condition of Global Precious Metals when he made the advances. Petitioner was not involved in nor did he have any knowledge of the recordkeeping procedures of Global Precious Metals. The money that petitioner advanced to Global Precious Metals was to be used to purchase coins for clients. Petitioner became concerned and contacted the FBI when money was being received from clients in payment for coins but no coins were being shipped to them. A criminal investigation ensued, Fred was subsequently convicted of charges arising out of his activities with respect to Global Precious Metals, and is currently serving a prison sentence. Petitioner does not know what happened to the money he advanced to Global Precious Metals and the advances to Global Precious Metals and Global Energy Services have not been repaid. On March 29, 1985, the Commissioner mailed petitioner a statutory notice of deficiency in which he reconstructed the income of petitioner. Petitioner concedes the adjustments *271 to income. The parties agree that petitioner is entitled to itemized deductions of $7,783, consisting of state and local taxes of $7,708, charitable contributions of $50, and a tax return preparation fee of $25. Petitioner contends that he is also entitled to a theft loss deduction or a bad debt deduction for the advances to Global Precious Metals which were not repaid. OPINION Section 165 allows as a deduction any theft loss sustained during the taxable year and not compensated for by insurance or otherwise. Sec. 165(a) and (c)(3). Section 165(e) provides that the deduction for such loss shall be treated as sustained in the taxable year in which the taxpayer discovers the loss. Thus, a loss arising from theft is not deductible in the taxable year in which the theft actually occurs unless that is also the year in which the taxpayer discovers the loss. Section 1.165-8(a)(2), Income Tax Regs. A loss is considered to be discovered when a reasonable man in similar circumstances would have realized the fact that he had suffered a theft loss. Cramer v. Commissioner,55 T.C. 1125, 1134 (1971). The issue of whether a theft loss occurred must be determined under *272 the laws of the State or other jurisdiction wherein the loss allegedly was sustained. West v. Commissioner,88 T.C. 152, 162 (1987); Paine v. Commissioner,63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975). The exact nature of a theft, whether it be larceny, embezzlement, obtaining money by false pretenses, or other wrongful deprivation of property of another, is of little importance provided it constitutes a theft. Edwards v. Bromberg,232 F.2d 107, 111 (5th Cir. 1956); West v. Commissioner,supra at 162. Petitioner contends that he is entitled to a theft loss deduction for the advances to Global Precious Metals that were not repaid. [2] Respondent contends that petitioner is not entitled to a theft loss deduction because at the time petitioner made the advances he did not consider the money stolen. Petitioner bears the burden of proof. Rule 142(a). *273 We find it unnecessary to decide whether petitioner sustained a theft loss with respect to the money advanced to Global Precious Metals because the evidence does not establish that the alleged theft loss was discovered during the taxable year 1980. Petitioner has not demonstrated that he discovered the alleged theft loss during the taxable year 1980. Petitioner was still making advances in December 1980. He became concerned and contacted the FBI when money was being received from clients in payment for coins but no coins were being shipped to them. However, the record does not establish when petitioner became concerned or contacted the FBI. A criminal investigation was conducted after petitioner contacted the FBI, but the record does not reveal when the investigation began or when it was concluded. Furthermore, petitioner continued to work for Global Precious Metals until the beginning of 1981. The fact that petitioner continued to work for Global Precious Metals until the beginning of 1981 suggests that he did not discover his uncle's malfeasance during the taxable year 1980. We point out that the relevant inquiry involves the facts in existence at the close of the taxable *274 year 1980 and the record contains no evidence that petitioner discovered the alleged theft loss during the taxable year 1980. Therefore, petitioner is not entitled to a theft loss deduction. Petitioner contends, alternatively, that he suffered either a business or nonbusiness bad debt and, thus, is entitled to a deduction under section 166. Respondent contends that petitioner failed to establish that the advances became worthless in the taxable year 1980. [3]
Section 166 allows a deduction for any debt which becomes worthless within the taxable year. The question of whether a debt becomes worthless during a taxable year is to be determined on the basis of the surrounding facts and circumstances, the burden of proof being on petitioner. Mueller v. Commissioner,60 T.C. 36, 41 (1973), affd. on this issue 496 F.2d 899 (5th Cir. 1974). In order to satisfy his burden of proof, petitioner must show that the advances had become worthless by the end of the taxable year 1980 and that there was no hope or expectation that they would become valuable at some future time. Dustin v. Commissioner,53 T.C. 491, 501 (1969), *275 affd. 467 F.2d 47 (9th Cir. 1972). Generally, this burden is met by a showing that some "identifiable event" occurred during the course of the year which effectively establishes the time the debt became worthless. Dustin v. Commissioner,53 T.C. at 501. It is frequently impossible to select a single factor which clearly establishes the date when a debt became worthless. More often it is a series of events which, in the aggregate, presents a picture establishing that the debt has become worthless. Minneapolis, St. Paul & Sault Ste. Marie Railroad Co. v. United States,164 Ct. Cl. 226, 240 (1964). Petitioner has not pointed to any events or circumstances during the taxable year 1980 that would indicate worthlessness. Petitioner did not testify as to his basis or reason for determining that the advances became worthless during the taxable year 1980. The record does not indicate when petitioner contacted the FBI or when the FBI began or concluded its investigation. There is simply nothing in the record to establish that the advances became worthless during the taxable year 1980. Accordingly, petitioner is not entitled to a bad debt *276 deduction. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. Petitioner introduced evidence as to advances made to Global Precious Metals and Global Energy Services. However, the parties couched their arguments in terms of advances to Global Precious Metals. The parties appear to be treating the advances to Global Energy Services as advances to Global Precious Metals, presumably because Global Energy Services was a subsidiary business of Global Precious Metals. This is immaterial based upon our resolution of the issues.↩
3. Respondent does not contend that a valid debt did not exist.↩